E. O. THOMPSON ET AL. V. FIRST STATE BANK OF AMARILLO.

No. 2994. Delivered April 23, 1919.

**1.—Bank—Stockholder—Illegal Contract—Liability to Creditors.**

A stockholder who has obtained his stock in disregard of the law (giving his note therefor instead of payment) and therefore still owes for it, is, in an action for the benefit of its creditors, answerable on his obligation in settlement of his stock subscription, and his violation of the law in this action is no defense. (Pp. 421-425.)

**2.—Same—Estoppel.**

In an action in the name of a State bank, but brought by direction of the Commissioner of Insurance and Banking, who had taken over its affairs upon its insolvency, to recover for the benefit of its creditors upon a note given by a stockholder in violation of the law (Constitution, art. 12, sec. 6) for the amount of his subscription for such stock, defendant was estopped to assert the illegality of the transaction by which it was given. (Pp. 421, 422.)

**3.—Same.**

The bank having power under the law to issue stock, and the illegality arising from a fact unknown to the innocent creditors of the bank, they will be protected, in an action in their interest, against a plea that the suit was on an illegal contract (taking the note sued on in payment of stock subscription) though as between the corporation and the stockholder the transaction was unlawful and unenforcible. (Pp. 422-425.)

Error to the Court of Civil Appeals for the Seventh District, on error from Potter County.

The bank sued Thompson on a note given by him for subscription to stock. Verdict was for plaintiff and defendant brought the case on error to the Court of Civil Appeals, where it was affirmed, whereupon he obtained writ of error from the Supreme Court.

*Crudgington & Works,* for plaintiff in error.

The taking of a note in payment for capital stock in a Texas banking corporation being in violation of the Constitution and statutes of the State of Texas, is such an illegal transaction as renders such note unenforcible by a receiver or liquidating agent in the courts of Texas, and the issue having been distinctly made, both by the pleadings and the evidence in this case, that the note sued on represented, by mesne renewals, the note dated July 1, 1910, which original note was given in full satisfaction and payment for $1000 of the capital stock of defendant in error bank, a Texas banking corporation, said bank was not entitled to the recovery which the trial court peremptorily instructed the jury to render in its favor. San Antonio Irrigation Co.

v. Deutschmann, 102 Texas, 201, 105 S. W., 486; 114 S. W., 1174; Mason v. Bank, 156 S. W., 366; Sturdevant v. Falvey, 176 S. W., 908; C. B. & C. Ins. Co. v. Curry, 183 S. W., 1; Prudential Life Ins. Co. v. Pierson, 188 S. W., 513; Bank v. Fink, 24 S. W., 939; Rue v. Railway, 74 Texas, 474; Sweeney v. Davis, 188 S. W., 438, and Crawford v. Davis, 188 S. W., 436.

A Texas corporation can not legally issue stock until all of the capital stock is fully paid up and in the hands of the corporators, and such payment is not legally made by the execution of a promissory note, same not being property or money within the meaning of the corporation laws of the State of Texas, and the issue having been distinctly made, both by pleadings and evidence in this case, that a portion of the alleged capital stock of defendant in error bank had been attempted to be paid by the note of plaintiff in error, said transaction was such an infringement of the Constitution and statutes of the State of Texas as to render unenforcible by defendant in error, the note so executed for such stock, it appearing that same represented by mesne renewals the original note given for said stock.  Rev. Civ. St. of Texas, arts. 4726 and 4728; Republic Trust Co. v. Taylor, 184 S. W., 772; Prudential Life Insurance Co. v. Smyer, 183 S. W., 825; General Bonding & Casualty Co. v. Moseley, 174 S. W., 1031; Jones v. Abernathy, 174 S. W., 682; Prudential Life Ins. Co. v. Pierson, 188 S. W., 513; Scoville v. Thayer, 105 U. S., 143 (26 L. Ed., 968); Sweeney v. Davis, 188 S. W., 438; Crawford v. Davis, 188 S. W., 436.

The defense of illegality in a transaction (the issuance of stock in a Texas corporation for a note) can not be waived, nor can estoppel be founded on such an undertaking.  Rev. Civ. St. of Texas, arts. 1146, 1147, 1168; Rue v. Railway Co., 74 Texas, 474; Kaufman v. Tarver, 87 Texas, 491; Willis v. Abney, 27 Texas, 204; McCormick v. Bank, 165 U. S., 545, 41 L. Ed., 817, 822; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S., 54-61, 35 L. Ed., 55; Gilder v. Hearne, 79 Texas, 120; Kanaman v. Gahagan, 185 S. W., 619; Seeligson v. Lewis, 65 Texas, 215; Reavis vs. Blackshear, 30 Texas, 753; Ater v. Rotan Grocer Co., 189 S. W., 1106; Cattlemen's Trust Co. v. Prewitt, 184 S. W., 716; Arkansas River Land Co. v. Farmers' L. & T. Co., 22 Pac., 954; Mitchell v. Porter, 194 S. W., 891; Craig v. Missouri, 4 Pet., 410; Springfield Bank v. Merrick, 14 Mass., 322; Hunt v. Knickerbocker, 5 Johns., 327.  That contract prohibited by statute is absolutely void, see Berka v. Woodward, 125 Cal., 125; Telegraph Co. v. Wopst, 118 Ind., 248; Van Metre v. Spurrier, 94 Ky., 22; Bowditch v. Ins. Co., 141 Mass., 242; Skelton v. Bliss, 7 Ind., 77; Waltrous v. Blair, 32 Ia., 58; Robinson v. Burrows, 48 Me., 146; Dean v. McLendon, 30 Miss., 343.

Defendant in error as liquidating agent of the bank was in no better position than the bank would have been to resist the defense interposed by plaintiff in error, as to the invalidity of the note on account of the illegality of the transaction out of which same grew.  Mitchell

v. Porter, 194 S. W., 891; Republic Trust Co. v. Taylor, 184 S. W., 772; Chicago Title Co. v. Brady, 65 S. W., 303; Newport v. Mimms, 53 S. W., 736; High on Receivers, 4th Ed., Sec. 205; 34 Cyc., 405-406.

*Turner & Rollins,* for defendant in error.

That before the defense that the note sued on was given for stock in the corporation could be held to be a valid defense, the plaintiffs in error are required to show that the stock subscribed for by E. O. Thompson was actually issued and delivered to him. Commonwealth Bonding & Casualty Ins. Co. v. Hill, 184 S. W., 247; Cope v. Pitzer, 166 S. W., 447; Bank v. Falvy, 174 S. W., 833; Horn v. Baker, 173 S. W., 470; Davis v. Burns, 173 S. W., 476; Cattlemen's Trust Co. v. Turner, 182 S. W., 438; Cattlemen's Trust Co. v. Pruett, 184 S. W., 716.

The plaintiff in error, E. O. Thompson, having permitted himself to be held out as a stockholder of the First State Bank of Amarillo and having received dividends, is estopped, after said bank has become insolvent, to assert that he is not a stockholder. McWhirter v. First State Bank, 182 S. W., 682; Burleson v. Davis, 141 S. W., 559; Davis

v. Burns, 173 S. W., 476; Scott v. Deweese, 181 U. S., 202; Lyons v. Benny, 79 Atl., 250; People's Bank v. Stroud, 73 Atl., 341; Sawyer v. Hogue, U. S., 21 L. Ed., 731; Allen v. Edwards, 47 So., 382.

Briefs by *Turner & Rollins* for appellee in McWhirter v. First State Bank of Amarillo, and by *Oscie Speer* for appellant in Mitchell, Receiver, v. C. T. Porter, in which similar questions were involved, were filed in this case by consent of court.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The First State Bank of Amarillo having become insolvent and its affairs having been taken over by the Commissioner of Insurance and Banking, to aid in its liquidation this action was brought at the direction of the Commissioner, though nominally by the bank, to enforce a note given by E. O. Thompson, a stockholder, for his stock in the bank.

While some question appears to have been made as to whether the stock was delivered to Thompson, his status as a stockholder was recognized by the bank and affirmed by him. A dividend on the stock was paid to and appropriated by him. In this court he treats the giving of the note as an agreed payment for the stock between the bank and himself, and upon that ground attacks the transaction as in violation of section 6, article 12, of the Constitution, prohibiting the issuance of stock by a corporation except for money paid, labor done or property actually received. We shall therefore regard the note as having been accepted in payment for the stock.

The question in the case is whether in this action,—one primarily for the benefit of creditors and arising in consequence of the bank's insolvency, Thompson is estopped to assert the invalidity of the transac-

tion. He is estopped, in our opinion, under the established principles of equity.

The effect of the transaction between Thompson and the bank was his acquisition of stock in the bank without making lawful payment for it. His promissory note, which only evidenced the liability of his stock subscription in another form,—constituting, at best, not payment, but merely his promise to pay, was not "property actually received," within the meaning of that term as used in the Constitution. Washer v. Smyer, 109 Texas, 398, 211 S. W., 985. He has therefore not fulfilled the obligation imposed by his stock subscription. His note represents that obligation.

Creditors dealing with a corporation have the right to assume that its capital has been or will be paid in accordance with law. It constitutes a warrant for the extension of credit. It, in effect, stands as a pledge for the security of the corporation's debts. Upon the corporation's insolvency, it becomes a trust fund for the protection of creditors. If it has not been paid up, they have the clear right to insist that it be paid up. The stockholder who has permitted himself to be held out as such, who has received and appropriated benefits from the corporate enterprise, but has not paid for his stock, rests under the duty to pay for it. With the debts of the corporation unpaid, it is a fraud upon innocent creditors, as well as a fraud upon the law, to release him from that duty.

Upon what principle is Thompson here entitled to be exempted from his obligation to pay for his stock? His counsel assert that he is absolved from it because he, with the bank, violated the Constitution in the transaction wherein, by means of the note, he agreed to perform it. The proposition is, that though his obligation is unperformed, his violation of the Constitution gives him immunity from its performance. The Constitution, in our opinion, can not be so used to defeat the honest claims of creditors. It makes a travesty of the Constitution to permit it in such a case to be turned into a shield for the protection of the delinquent stockholder.

The plea of his own wrong by one in default is a weak plea at best. When urged against innocent third parties, equity refuses to give it sanction save in those exceptional instances where they are charged with knowledge of the invalidity of the transaction. Lord Mansfield asserted as an indisputable proposition, in Montefiori v. Montefiori, 1 Blackstone's Reports, 362, repeated as a maxim by Broom, that "as against an innocent party, no man shall set up his own iniquity as a defense."

All men are charged with knowledge of the law, but they are not charged with knowledge of the facts. We are not dealing here with a prohibited corporation—one which could not, under the law, exist, and hence without power to issue stock. Nor are we dealing with a stock transaction denounced by the law as utterly void. Stock issued for which no payment is made, or for which full and lawful payment is not

made, is illegally issued because such issuance of stock is prohibited by the Constitution. As between the corporation and the stockholder, such stock is invalid. So, the subscriber's giving of his note—which is not property for the purpose—is not a valid payment for the stock. But neither the stock issued nor the note given in such a transaction is void under the Constitution. Washer v. Smyer. The bank here had power to issue the stock. What made the stock invalid was not the bank's want of power—a thing governed by the law, but the manner in which the power was exercised—a thing determined by the facts. Persons dealing with a corporation, while chargeable with knowledge of its powers, are not bound to take notice of the manner in which it has attempted to exercise its powers. Kampman v. Tarver, 87 Texas, 491, 29 S. W., 768. This is because its powers rest in the law, while the manner of the exercise of its powers rests in the facts. With the bank possessed of the power to issue the stock, creditors without fault would have the right to assume that it was issued in a lawful manner. They would not be chargeable with notice of the facts which made the manner of its issuance unlawful. With this true, the estoppel which equity creates in their favor can not be defeated by the fact that the transaction was, as between the parties, invalid. In all such cases equity refuses to permit the stockholder in default to plead his own wrong as a means of defeating his just obligation. As a matter of good conscience he should not be heard to plead it. In such situations equity is concerned in the stockholder's doing what he ought to do, rather than in his having done what he ought not to have done. It therefore holds him estopped, and properly so.

As to stock transactions affected with the same invalidity as that here presented and other invalidity of kindred character, this is the rule generally affirmed. Thompson on Corporations (2d ed.), sections 5182, 5194; Clark & Marshall on Corporations, section 795.

Dilzell Engineering, etc., Company v. Lehman, 120 La., 274, 45 So., 142, was a case where the defendant stockholders agreed among themselves that certain stock should be issued and divided between them without paying the corporation therefor. That State has the same constitutional provision as our own in respect to the issuance of stock. In a receiver's suit the defendant set up the invalidity of the transaction under the Constitution, as here Thompson does. Of this defense the court said:

"While it is not here said expressly that the value of the labor or property received in payment of the stock must be equal to the face value of the stock, that is the idea meant to be conveyed. The defendants in this case do not contend differently, but argue that, inasmuch as the stock is stricken with nullity, no action can arise upon it against the subscriber. How far this may be true, as between the corporation and the subscriber, we need not inquire. It can not be true as between the creditors of the corporation and the subscriber. . . . Such being the situation, the question presented is whether the mana-

gers of the affairs of a corporation in this State, who have distributed among themselves in part or in whole the stock of the corporation without value received to the corporation, can by invoking article 266 of the Constitution escape liability to the creditors of the corporation who have dealt with the corporation upon the faith of the said stock having been issued for value. The question is not debatable. The answer is that they can not, and they are liable, not because the stock is a valid contract, but because, as between them and the creditors of the corporation, the validity of the contract will not be permitted to be inquired into. They are estopped from setting up the invalidity or nullity. Ewart on Estoppel, p. 187 et seq."

In Farmers & Mechanics Bank v. Jenks, 48 Mass., 592, where a note was given for his stock by a stockholder which it was insisted by him in the receiver's suit made the transaction illegal and a fraud upon the corporation laws of the State, this was said:

"As to fraud, this, in point of fact, may, and appears to be, well sustained; but it was a fraud in which all parties participated. For this fraud the bank might have been amenable before the proper tribunal; but it is not competent for the maker of this note to take this objection to a recovery of the amount due thereon, in an action instituted by a receiver appointed by this court, and representing the creditors of the bank. It is assets that may well be collected for the purpose of discharging the debts of the bank, or the expenses of closing its concerns under the orders of the court."

In Vaughan v. Alabama National Bank, 143 Ala., 579, 42 So., 65, 5 Ann. Cases, 665, the stock was issued on payment of less than its par value. In a suit by a creditor to compel full payment by the stockholders to whom the stock was so issued, the violation of the law in such issuance of the stock was pleaded as a defense. The defense was disposed of in this language:

"Appellants next raise the question that the transaction was illegal, towit, the issue of stock without being fully paid up, and hence no recovery can be had, based on that illegal transaction. Respondents are estopped from making that defense. 1 Cook on Corporations, sec. 288."

Mathis v. Pridham, 1 Texas Civ. App., 58, 20 S. W., 1015, by the Court of Civil Appeals for the First District, is to the same effect.

Veeder v. Mudgett, 95 N. Y., 295, involved in a creditor's suit the liability of stockholder upon an invalid increase of stock. The stockholders were held estopped to assert the defense of illegality in the stock issue, as follows:

"The attempted increase was, therefore, illegal, but the respondent insists that, nevertheless, as against the creditors of the company, the defendant stockholders by accepting their proportions of the increased stock, by voting for its increase, by taking dividends upon it, and holding it out to those dealing with the company as an actual component of its capital, are estopped from denying the legal validity of the in-

crease and must be held responsible as if it was valid. The authorities for this doctrine are numerous and strong. (Citing authorities.) The answer made to them is that an act absolutely and wholly void, because, under the law, incapable of being performed, can not be made valid by estoppel. This is true where under the law there is an entire lack of power to do the act which is brought in question. The distinction is well illustrated in Scovill v. Thayer (105 U. S., 143). Under the law of Kansas no company like that then before the court could increase its capital to more than double an amount originally authorized. The capital was sought to be increased in excess of that amount. As against creditors it was claimed to be a valid increase by the operation of an estoppel, but the court ruled otherwise, and justly; for the very foundation of an estoppel, the misleading of creditors to their injury, was wanting. The latter knew and were bound to know that no power existed to so increase the capital, and therefore that it was not increased; and hence they were not, and could not be misled. But where, as in the present case, the abstract power did exist, and there was a way in which the increase could lawfully be made, and the creditors could, without fault, believe that the increase had been lawfully effected and the necessary steps had been taken, there the doctrine of estoppel may apply, and the increased stock be deemed valid as against the creditors who have acted upon the faith of such increase. The referee has found that each and every one of the present defendants have done some act which bring them within the range of the estoppel alleged, or hold shares of the stock which in the hands of the assignors stood charged and burdened with a liability for the company's debts. We must, therefore, treat the increase as lawful, and precisely as if the needed preliminary steps had in truth been taken."

Other authorities might be cited at length. On principle, without the need of authority, a stockholder who has obtained his stock in disregard of the law from a corporation empowered to issue it, and who therefore still owes for it, is, in an action for the benefit of creditors, answerable on his obligation given in settlement of his stock subscription; and his violation of the law in the transaction is no defense.

The judgment of the Court of Civil Appeals and the District Court are affirmed.

*Affirmed.*