**GLENN H. McCARTHY, Inc., et al. v. KNOX et al.**

No. 11674.

Court of Civil Appeals of Texas. Galveston.

March 1, 1945.

Rehearing Denied April 12, 1945.

834

Charles W. Bell, A. G. McNeese, Jr., and Cecil C. Rotsch, all of Houston (Fulbright, Crooker, Freeman & Bates, of Houston, of counsel), for Glenn H. McCarthy, Inc., and another.

Devereaux Henderson, of Houston, and Renne Allred, Jr., of Austin, for Will G. Knox, receiver.

CODY, Justice.

On this appeal each side is both appellant and appellee.

On March 18, 1941, the United Employers Casualty Company, a Texas corporation, was adjudged insolvent by a district court of Travis County, and Will G. Knox was appointed receiver. Prior to that, on July 20, 1938, said corporation had bought out all the assets, and assumed all the liabilities of the Southern Underwriters, also a Texas corporation. For reasons not apparent from the record, the latter-named corporation was also adjudged insolvent by the same court, and Will G. Knox was appointed receiver on February 19, 1942. This appeal relates to the business of a single insurance carrier of workmen's compensation, whether it was carried on by the Southern Underwriters prior to July 20, 1938, or by the United Employers Casualty Company thereafter. It will make against confusion therefore to refer to said corporations hereafter indifferently as the insurance carrier.

On May 22, 1943, Will G. Knox brought this action as receiver of the insurance carrier (being the insolvent corporations) to recover from the defendants, Glenn H. McCarthy, Inc., and the McCarthy Drilling Company, certain sums of money alleged to be due from defendants as insurants on certain policies of workmen's compensation insurance. The defendants are also Texas corporations. The parties will hereafter be referred to as they were designated in the trial court.

The policies involved were:

rier) which had been paid. The difference of the two sums was $36,160.58. And by general allegations plaintiff sought to recover such sum from defendants.

By special allegations plaintiff sought to recover from defendant Glenn H. McCarthy, Inc., a credit of $21,691.91, given by the insurance carrier on ·the policies which it was alleged was given October 31, 1938. By like allegations plaintiff sought to recover from defendant McCarthy Drilling Company a credit of $8,231.73, alleged to have, been given it by the insurance carrier October 16, 1939. The special allegations were to this effect: That defendants and the insurance carrier entered into an illegal and fraudulent agreement and conspiracy whereby the defendants were to get their workmen's compensation insurance for less than the lawfully prescribed rates. That by such unlawful agreement and conspiracy the insurance carrier was to get outright 45% of the lawful premiums. That the remaining 55% was to be applied to payment of the claims of defendants' employees which arose during the period covered; and the balance of the 55% remaining after satisfying such claims should revert to, or be credited to, defendants.

Plaintiff further alleged that such agreement was not made a part of the policies by endorsement attached thereto, or otherwise; and was not submitted to the Board of Insurance Commissioners for their approval. In substance it was alleged that the agreement was secretly, confidentially and unlawfully made; that the payroll reports were made by the carrier in accordance with the lawful rates. But that pursuant to such agreement and conspiracy the defendants received the credits or rebates so specified, and plaintiff sued for. The plaintiff alleged that the true nature of the transaction was concealed on defendants' books. Also that the insurance carrier concealed the agreement and the operations under it on its records.

Policy No. W.C.—5227, covering the period, October 16, 1936–Oct. 16, 1937.
" " W.C.—5227—1, " " " , October 16, 1937–Oct. 16, 1938.
" " W.C.—10,734, " " " , October 16, 1938–Oct. 16, 1939.

In his petition plaintiff alleged the total sum of the lawful premiums which had been earned on the three policies, and then alleged the total sum of premiums (as shown by the books of the insurance car-

Plaintiff further alleged, as though forming a part of the alleged conspiracy, the following: That the defendants had failed to record on their books certain charges made by the insurance carrier as a result

of its audits of defendants' payrolls whereby it was discovered that additional premium was due; and for which the insurance carrier thereafter rendered bills to defendants. The amounts were alleged to be $2,758.47, due from Glenn H. McCarthy,' Inc., for the period March 1, 1938–October 15, 1938. Like allegations were made with respect to the sums of $3,138.43 and $918.27.

Except where the allegations thus descended into particulars, the petition sought reparation for undercharges on all premiums paid on the three policies.

Defendants' answer, among other things, pled in bar the four-year statute of limitations, and a general denial. These are the only pleas urged on appeal.

The case was tried without a jury. And on the 9th day of August, 1944, the court rendered judgment for plaintiff against Glenn H. McCarthy, Inc., in the sum of $21,691.91, with interest from the date of judgment at the rate of 6% per annum. And for plaintiff against McCarthy Drilling Company in the sum of $8,231.73, and for interest thereon thereafter at such legal rate.

It will be noted that in each instance judgment was rendered for the sum sued for by plaintiff, as having been received by the defendant as a credit, pursuant to the alleged unlawful agreement.

At the defendants' request the court filed conclusions of fact and law, substantially as follows:

That the policies sued on complied with the laws of the State, and that the premiums which were stated on the face of the policies were the lawfully established rates for the risks involved.

That the defendants made the agreement with the insurance carrier, which plaintiff complained of to this effect: That the carrier accept 45% of the lawful premiums, and the remaining 55% would be used to pay the claims of defendants' employees arising during the coverage period, and the remaining balance would revert to or be credited to defendants. That such agreement was in effect at all times material to this suit. And that under such agreement Glenn H. McCarthy, Inc., received a credit of $21,691.91, given on October 31, 1938. And that in the same way a credit of $8,231.83 was given to McCarthy Drilling Company on October 16, 1939.

That neither of the credits were approved or allowed by the Board of Insurance Commissioners, and each such credit represented the difference between the 55% of the lawful premiums payable under the policies, and the claims filed by defendants' employees during the periods of coverage. And that such credits were given pursuant to such agreement.

That the plaintiff represents the creditors of the insurance carrier, including a large number of compensation claimants, and some of such compensation claimants were employees of defendants when they were injured.

That the insurance carrier is insolvent, with or without the recovery of the two credits.

That the defendants, their agents and representatives had no actual intent to violate the laws of the State in making the agreement under which they received the two credits. But they did intend and expect to receive their insurance premiums below the amounts stated on the face of the policies.

That the two credits were not concealed on the books of the defendants, but were placed in appropriate accounts, and supported by explanatory statements showing the true nature of such credits. And defendants' books were open at all times to plaintiff, and to the insurance carrier for inspection. They were kept in such a manner as would disclose the credits to an auditor of ordinary ability and experience upon examination.

That the two credits, together with the written memorandums evidencing the agreements by which the credits were to be given were concealed in the books and records of the insurance carrier. The receiver (plaintiff) exercised due diligence in discovering the true nature of such transactions whereby the credits were given. He did not actually discover the existence of the agreement until August 1, 1941. That neither defendant gave notice to their employees of the agreement, nor of the credits received thereunder.

That the agreement was unlawful, and the two credits received thereunder were unlawful, and the defendants were charged with the knowledge of such illegality. That the receiver (plaintiff) is a trustee for the creditors of the insurance carrier and its stockholders, and the statute of limitations did not start to run until the

receiver's appointment (March 18, 1941, and February 19, 1942), and the suit to recover the credits is not barred. That the receiver did not ask for interest in his pleadings, and interest is denied on the credits from the time same were given until law day.

To the foregoing conclusions of fact and law both plaintiff and defendants objected in various particulars, and requested further findings; such objections were overruled and further findings denied.

Both the plaintiff and the defendants have appealed.

The defendants have urged eleven formal points as cause for reversal, but these boil down to these:

1. That the court erred in failing to hold that all items of undercharge, except the total of $11,122.63, were barred by the four-year statute of limitations.

2. That the evidence is insufficient to support the court's findings that it was agreed between defendants and the insurance carrier at all times material to this suit that out of 55% of the lawful premiums the claims of defendants' employees would be paid and the balance revert to defendants.

3. That the evidence is insufficient to support the court's findings that the defendants received the credits of $21,691.91, and $8,231.73, pursuant to an unlawful agreement.

4. That the court should have sustained the right of defendants to plead in bar the four years' statute of limitations, as they had in no case been guilty of actual fraud, or concealment, and so, were under no estoppel to avail themselves of such plea.

5. That the acts of the insurance carrier in making concealments were not binding on defendants, and it was error for the court to find that the two credits were concealed in the books and records of the insurance carrier.

6. That the court erred in finding that the statute of limitations did not start to run until the appointment of the receiver, because the statute began to run when the premiums fell due for which reparation is here sought.

The substance of plaintiff's cross-assignments is:

That the court erred in failing to render judgment for the full sum sued for.

That the court erred in failing to render judgment for interest at the legal rate on each undercharge of premium from the date it accrued until law day, which was August 9, 1944.

### Opinion.

It is well settled that a suit brought on a workmen's compensation insurance policy to recover reparation for undercharges of premium is vulnerable to the plea of the four-year statute of limitations, i. e. R.C.S. Art. 5527. Brown & Root v. Traders & General, Tex.Civ.App., 135 S.W.2d 534, error dismissed. It is also settled that normally the right to sue on a policy of this kind arises at the end of the policy year. Battles v. Braniff Airways, Inc., 5 Cir., 146 F.2d 336.

It appears from the allegations of plaintiff's petition that the sum of $21,-691.91, for which (among other things) suit is brought, if sued for as being undercharges, was barred, suit being filed on May 22, 1943. Therefore, the burden rested on plaintiff to exhibit a suit to recover said sum that limitations did not apply to. 37 C.J., 971. The plaintiff, therefore, has not sought recovery of the "credit" of $21,691.91, on the basis that the same constitutes undercharges of premium. But he undertakes to allege an action on two theories as a basis to recover such sum to which the four-year statute of limitations would not be applicable. These two theories he has intermingled in his pleadings, but are (1) On the one hand he had alleged that said defendant obtained said sum as a credit pursuant to an unlawful agreement with the insurance carrier; the agreement being one whereby said defendant, as an insurant, participated with the insurance carrier in a division of insurance premium which, by law, defendant was bound to pay and the carrier to receive as premium. (2) On the other hand the plaintiff has alleged the same agreement as constituting a conspiracy to violate the insurance laws of the state.

We first discuss the suit as based on the theory that said defendant received such sum pursuant to an illegal agreement to participate in a division of insurance premium. The court found, and upon sufficient evidence, that said defendant received the sum of $21,691.91 pursuant to an unlawful agreement. Among other evidence of the agreement was a letter written to defendants by the United Em-

ployers Casualty Company, after it had bought out the business of the Southern Underwriters, to this effect: That the policy which was then in effect had been endorsed to the insurance carrier as of July 20, 1938; and that such endorsement provides for the full assumption by such carrier of the liabilities of the bought-out carrier, inclusive of the agreement "made with you as to division of your premiums. Or, in other words, we will set aside 55% of your premiums out of which to pay your losses and any difference between your actual losses and this 55% will be returnable to you. Out of the 45% retained by us, we will pay all general expenses including agents' commissions."

The court, upon sufficient evidence, found that the defendants had no actual intent to violate the laws of the State of Texas by entering into such agreement. But that defendants did expect and intend to receive credits which would reduce their premiums below the amounts stated on the face of the policies (and which were the only rates lawfully prescribed for the risks involved). Defendants' evidence showed that they were not insurance experts, and that they relied on the insurance agent; that they understood in a general way that insurants sometimes received dividends in connection with their insurance policy. The defendants openly remitted payments to the insurance carrier of premium by checks which referred to the arrangement by which credits were taken on the premium. In other words, defendants did not themselves practice any concealment.

While, in practice, it is doubtless true that insurants rely, and, in the nature of things, must rely upon an insurance agent to correctly inform them as to insurance rates, yet, since rates are fixed by law, the insurants are charged with knowledge of the rates as fixed by law. One of the primary reasons given in the law which provides for the fixing of rates for workmen's compensation premium is: That the rates of premium shall be adequate to the risks to which they apply, and consistent with the maintenance of solvency of the insurance carrier and the creation of adequate reserves and a reasonable surplus. R.C.S. Art. 4911.

Another obvious reason for prescribing the rates by law is to prevent discrimination. And the provision for the uniform workmen's compensation policy serves the dual purpose of enabling the Board of Insurance Commissioners to detect any errors in rate, or any discrimination—intentional or unintentional. R.C.S. Art. 4913. Said article expressly provides that any contract or agreement not written in the application and policy shall be void, and a sufficient cause to revoke the license, of the offending company to write workmen's compensation insurance in this state.

It is difficult to see how the law could be better framed to prevent rebating. That the insurance carrier consciously made the agreement in defiance of law will not admit of doubt. It carefully concealed it, so that it was hidden in its records; and the payroll reports were made upon the basis of lawful rates. That defendants made the agreement in ignorance of the law constitutes no legal defense. Nor do defendants contend otherwise. They contend that, being ignorant in fact that the agreement was unlawful, they have not placed themselves beyond the pale of law so as to estop themselves from pleading the bar of the statute of limitations. That is, at most they were merely chargeable with constructive, not actual, fraud.

As already indicated, plaintiff's action to recover the "credits" is not brought as an action to recover reparation for undercharges. That the "credits" involved represented undercharges of premium is evident. But that is not to the purpose, where, as here, the plaintiff does not seek to recover them as being undercharges. The plaintiff, as representative of the creditors of an insolvent corporation, disaffirmed the agreement under which the credits were given, and disaffirmed the act which gave such credits, and sued to recover such credits.

"The receiver of a corporation, as a representative of the creditors, may disaffirm acts done by the corporation which are illegal and in violation of law. 19 C.J.S., Corporations, § 1516, p. 1250. See also Shaw v. Barchers, Tex.Com. App., 46 S.W.2d 967; Thompson v. First State Bank, 109 Tex. 419, 211 S.W. 977. Doubtless the insurance carrier could have repented at any time within four years and sued to recover the "credits", as being undercharges. But this would have subjected it to the loss of its license. It was

not a thing to be expected. Moreover, it seems clear that when the agreement had become executed, the parties to it were in pari delicto, and the insurance carrier could not have maintained an action to recover the "credits", as such. That the right to disaffirm the agreement and sue for the credits belonged only to the receiver, as representative of the creditors of an insolvent corporation is obvious, for the insurance carrier could not have maintained such an action. The right to disaffirm such agreement, and sue for such credits, could not accrue until the corporation was adjudged insolvent; and the court found that the receiver did not discover the illegal agreement until August, 1941, and that he exercised due diligence. Within less than two years thereafter he brought this action. We take it that it was with reference to this portion of the suit that the court below held the bar of the two-year statute of limitation did not operate.

As indicated, so long as the insurance carrier was in charge of its affairs, no right to disaffirm and sue to recover the credits accrued. And from the language of Art. 4911, referred to above, we think it must be held that the tendency of the agreement in question was to bring about the insolvency of the corporation. So, when insolvency occurs, it may be considered as having been contributed to by such agreement, both as an event and a condition. Neither the existence of the agreement nor of the credits given thereunder could have been detected by the creditors of the insurance carrier before the insolvency occurred. Furthermore, they had a right to rely upon the assumption that defendants were paying the lawful premiums. See Thompson v. First State Bank, supra. We have concluded that the court correctly held that plaintiff's action to recover the "credits" was not barred by the two or four-year statutes of limitations.

The case of Battles v. Braniff Airways, Inc., cited supra, is not in conflict with this conclusion. As we understand that decision, the Casualty Underwriters of which Battles was receiver had been in receivership for more than four years when suit was brought. The plaintiff has so represented in a reply brief, and such representation is undenied. It therefore appears that where the court refers to the knowledge of the receiver's predecessor of the accrual of the cause of action, the reference was to a preceding receiver. So the case is not in point. The knowledge of the insolvent insurance carrier (and its officers), which had participated in the illegal agreement in fraud of the creditors, of such illegal agreement and credits given thereunder, could not be charged against, or imputed to, the creditors who were thereby defrauded. The action of the carrier in giving such credits was hostile to the creditors, and, as we have seen, such an action is not binding upon the receiver of the insolvent carrier.

■ With reference to the conspiracy allegations, it is clear that the court did not find, eo nomine, that a conspiracy existed. But it seems that the court found the existence of what in law constitutes the elements of a conspiracy. See Palatine Ins. Co. v. Griffin, Tex.Civ.App., 202 S.W. 1014, reversed on other points, Tex. Com.App., 235 S.W. 202. The court found that the defendants intended to obtain the credits at less than the rates prescribed in the policies, and that the rates prescribed in the policies were the lawfully prescribed rates. Though defendants did not know of the illegality of the agreement, the purpose of the conspiracy is to be determined ordinarily by the quality of the acts to be performed under it. Palatine Ins. Co. v. Griffin, supra. It is therefore not a necessary element that a party have knowledge of the illegality of the end which would be accomplished thereby. The receiving by defendants of the illegal credits from the insurance carrier was a wrong on the creditors of the insurance carrier, as well as contrary to law. No citation of authority is deemed necessary to support the proposition that the acts of all parties to a conspiracy in furthering it, are the acts of all parties to it. So the concealment by the insurance carrier of the agreement must be deemed chargeable to defendants, though they in fact knew nothing of such concealment. It cannot therefore be said that the cause of action was not concealed by a party to the conspiracy. And since the cause of action was concealed by the insurance carrier, the statute of limitations could not be said to be put in motion until after the agreement, so concealed, was discovered in the records of the insurance carrier, which was in August, 1941, less than two years before suit was brought.

What has been said with respect to the suit to recover the credit of $21,691.91, given to Glenn H. McCarthy, Inc., applies with equal force to the credit to McCarthy Drilling Company of $8,231.73, given October 16, 1939. But there is this difference respecting the right to recover the two credits. We infer that the credit of $8,231.73, was given at the end of policy year, of the policy last in force. This being true the receiver, had he seen fit, could have sued to recover the sum of $8,231.-73, as for undercharges. Less than four years had elapsed after October 16, 1939, when this suit was filed on May 22, 1943. The general allegations by plaintiff as to "undercharges" cannot be taken as applying to the "credits" sued for. By specific allegations it is clear that plaintiff sought to recover the "credits" upon the basis discussed above. This is important when we come to discuss the item of interest which plaintiff contends he was entitled to recover, though he asked for no interest, eo nomine, in his pleadings.

 The items of $2,758.47, $3138.43, and $918.27, were, according to the allegations of plaintiff's petition, items of undercharges of premium due upon payrolls which the defendants failed to report to the insurance carrier, and which the carrier's audits found, and for which the carrier duly billed the defendants respectively. While plaintiff's allegations purport to connect said items with the alleged conspiracy, yet the allegations come to no more than this, that the defendants concealed said items on their books, and failed to pay same notwithstanding the insurance carrier billed them therefor. Since the allegations fail to allege any collusion, and a defendant cannot conspire with himself, the effect of such allegations is this—that the defendants knowingly failed to pay such items. The court properly declined to render judgment for plaintiff for so much of such items as were past due more than four years when suit was filed. As for so much of said items as were not barred, we assume that the agreements of the parties hereafter referred to have disposed of them.

We have been somewhat confused by the agreements of the parties. They are to the effect that an additional sum of $177.43 accrued as undercharges against the McCarthy Drilling Company within four years of the filing of the suit, in addition to the $8,231.73, for which judg-ment was awarded plaintiff. The effect of agreements (which agreements are to be pieced together from the various reply-briefs) is that plaintiff should have received judgment against McCarthy Drilling Company in the sum of $8,409.20, instead of the sum of $8,231.73. The judgment of the court below will therefore be reformed so as to award plaintiff judgment against McCarthy Drilling Company in the sum of $8,409.20, with interest thereon at the rate of 6% per annum from the date of judgment below.

 The court correctly denied any recovery of interest, prior to the date of judgment, on the sum of $8,231.73, found to be a "credit", and which is embodied in the sum of $8,409.20, mentioned in the preceding paragraph. R.C.S. Art. 5070 provides: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent. per annum shall be allowed upon all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; * * *." As stated above, by the insurance policy it is agreed that the insurant will pay and the carrier collect the lawful premium rates by the end of the policy year. The amount of the lawful premium was therefore ascertainable from the written contract of insurance. An undercharge is the difference between the lawful premium and the lesser amount paid by the insurant. Interest on an undercharge therefore runs from the end of the policy year, at the rate of 6% per annum. We infer from the aforesaid mutual representations or admissions of the parties in reply briefs that, as to the additional sum of $177.43, the same constituted an undercharge payable on October 16, 1939, the end of the policy year. Hence the court should have awarded thereon interest at the rate of 6% per annum to date of judgment below. And the judgment is further reformed to include such sum of interest against the McCarthy Drilling Company. But, as indicated above, plaintiff's recovery of the "credit" was not a recovery of "undercharges", and was not sued for as such. Such recovery was of a sum paid under an illegal agreement and such sum does not come within the purview of Art. 5070.

We further understand from the agreement of the parties, pieced together from their briefs, that it is admitted that it

840

was proved that Glenn H. McCarthy, Inc., had failed to pay undercharges which were due October 16, 1939, amounting to $2,713. It follows from what has been said above that, in addition to the judgment of $21,691.91, the court should have awarded the further sum of $2,713, with interest thereon, from October 16, 1939, at the rate of 6% per annum until the day of judgment. But the court properly refused to award any interest on the sum of $21,691.91, prior to the date of judgment. The judgment against Glenn H. McCarthy, Inc., must be accordingly reformed. And so reformed, the court's judgment is affirmed.

Judgment reformed and affirmed.