**Alan B. RICH d/b/a/ Law Office of Alan B. Rich, Appellant**

**v.**

**CANTILO & BENNETT, L.L.P., Special Deputy Receiver of Santa Fe Auto Insurance Company, Inc., Appellee**

**NO. 03–15–00408–CV**

Court of Appeals of Texas, Austin.

Filed: February 9, 2016

Rehearing Overruled April 5, 2016

Peter A. Nolan, Winstead PC, Bogdan Rentea, Rentea & Associates, Christopher G. Fuller, Austin, TX, Clint L. Taylor, William D. Cobb, Jr., Cobb Martinez Woodward PLLC, Dallas, TX, for appellee.

Christoher Shuley, Lisa M. Doering, Wright & Greenhill, PC, Austin, TX, Alan B. Rich, Dallas, TX, for appellant.

Before Justices Puryear, Goodwin, and Field

## OPINION

David Puryear, Justice

In this interlocutory appeal, attorney Alan B. Rich appeals the district court's order denying his motion to compel arbitration. His motion contended that a provision in a legal representation agreement he entered into with Santa Fe Auto Insurance Company, Inc. (Santa Fe) providing for the arbitration of fee disputes binds the later-appointed Special Deputy Receiver of Santa Fe in its lawsuit against Rich and other defendants alleging (1) statutory claims for fraudulent transfers and voidable preferences and (2) common-law claims for breach of fiduciary duty and negligence. Because we conclude that the Receiver's common-law claims against Rich are subject to the arbitration provision, we will reverse the district court's order in part, render judgment ordering the Receiver to arbitrate its common-law claims against Rich, and affirm the order with respect to the Receiver's remaining claims.

## BACKGROUND

In the legal representation agreement at issue, Rich agreed to represent various parties, including Santa Fe,[1] in a lawsuit filed against them by Lincoln General Insurance Company alleging, among other claims, Santa Fe's conversion of property and aiding and abetting two of its officers' breaches of fiduciary duty. *See Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.,* 892 F.Supp.2d 787 (N.D.Tex.2012), *aff'd in part, rev'd in part and remanded,* 787 F.3d 716 (5th Cir.2015). The arbitration provision in dispute reads:

> You agree to notify me in writing if you dispute any billing entry or computation. If you fail to do so within thirty (30) days after the date of a statement, all entries shall be deemed by both you and I to be fair and correct. If you disagree with the amount of my fee, please take up the matter with me as soon as you can. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. In the event of a fee dispute which is not readily resolved, you have the right to request arbitration under supervision of the state or local bar association for the jurisdiction in which we practice, and I agree to participate fully in that process. **Any dispute regarding payment shall be submitted to arbitration.**

(Emphasis added.)

Several years later, the Texas Commissioner of Insurance placed Santa Fe into liquidation and appointed appellee Cantilo & Bennett, L.L.P., as Special Deputy Receiver of Santa Fe. *See* Tex. Ins. Code §§ 443.151, .154(a). In this capacity, appellee is statutorily authorized to pursue claims on behalf of Santa Fe's policyholders, shareholders, and creditors. *See id.* § 443.154(m). Accordingly, appellee filed this lawsuit alleging several statutory and common-law causes of action against Rich and the other defendants: (1) fraudulent transfers under the Uniform Fraudulent Transfer Act (UFTA), *see* Tex. Bus. & Com. Code §§ 24.005, .006, and the Insurance Receivership Act, *see* Tex. Ins. Code § 443.205, and voidable preferences under the Insurance Receivership Act, *see id.* § 443.204; and (2) breach of fiduciary

---

1. The other parties to the agreement, including two officers and directors of Santa Fe and several affiliates of Santa Fe, are defendants in this suit but not parties to this appeal.

duty, aiding and abetting breach of fiduciary duty, and negligence.

Appellee supported the claims in its petition against Rich with the following relevant factual allegations: (1) Rich billed and was paid by only Santa Fe for services he provided to the other defendants in the *Lincoln General* litigation and continued to bill and accept payments from only Santa Fe for his services even after Santa Fe was dismissed from that lawsuit; (2) for months leading up to Santa Fe's receivership, Rich was "intimately familiar" with the financial condition of the various defendants but continued to act on behalf of Santa Fe's officers to Santa Fe's detriment by receiving weekly fee payments from Santa Fe; and (3) Rich purported to represent one of Santa Fe's officers against appellee in a matter directly related to Rich's prior representation of Santa Fe, a conflict of interest. Appellee's petition sought relief against Rich in the form of damages and interest, fee disgorgement, punitive damages, and attorney's fees.

Rich moved to stay the proceedings and compel arbitration under both the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, and the Texas Arbitration Act (TAA), Tex. Civ. Prac. & Rem. Code § 171.001, *et. seq.* [2] The trial court denied his motion to compel, and Rich appeals that order.

## DISCUSSION

Rich contends that the Receiver's claims against him fall within the scope of the arbitration provision and that the district court abused its discretion in denying his motion to compel. *See In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex.2010) (trial court that refuses to compel arbitration under valid and enforceable arbitration agreement abuses its discretion). When considering a motion to compel arbitration, the court must determine first whether a valid arbitration agreement exists and, if so, whether the claims in dispute fall within that agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig.proceeding); *see also In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006) (orig.proceeding) (whether valid arbitration agreement exists is legal question subject to de novo review). If the relevant parties did not sign the contract in which the arbitration agreement is found, addressing the first step includes analysis of whether a non-signatory is bound by or can enforce the arbitration agreement. *In re Rubiola*, 334 S.W.3d at 223–24. A party may meet its burden to show that the agreement applies to the parties involved in the dispute by showing that the party either signed the agreement or is otherwise bound to it under principles of contract law and agency. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex.2005) (orig.proceeding).

**2.** Rich contends that both the FAA and TAA apply, *see In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex.1999) (when contract involves interstate commerce but does not specifically reference FAA, either FAA or TAA, or both, may be invoked to compel arbitration), but appellee disputes the applicability of the FAA. However, our analysis under the circumstances here is the same under either statute, and we therefore need not determine whether the FAA applies. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 n. 14 (Tex.2015) (unless party argues that FAA preempts TAA on any relevant issue or that the acts materially differ, we may find guidance in court decisions addressing both acts); *Zaporozhets v. Court Appointed Receiver in Cause No. 12–DCV–199496*, No. 14–14–00143–CV, 2014 WL 5148151, at *2 (Tex.App.–Houston [14th Dist.] Oct. 14, 2014, no pet.) (mem.op.) (same); *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992) (orig.proceeding) (when Texas courts are called upon to decide if disputed claim falls within scope of arbitration clause under FAA, Texas procedure controls that determination).

However, a party who has not agreed to arbitration has a right to have disputes resolved by litigation. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex.1994).

■ Even though Texas law strongly favors arbitration, the presumption favoring arbitration only arises after the court determines that a valid agreement to arbitrate exists. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). In deciding whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *See In re Kellogg Brown & Root*, 166 S.W.3d at 737. Instead, through the neutral application of state contract law, we decide whether an enforceable agreement exists in the first instance and whether generally applicable contract defenses may be applied to invalidate the arbitration agreement. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex.2008).

■ Once an arbitration agreement is found to exist, doubts regarding an agreement's scope are resolved in favor of arbitration because there is a strong presumption favoring agreements to arbitrate. *In re Kellogg Brown & Root*, 166 S.W.3d at 737. A court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995) (internal quotation marks and emphasis omitted). In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint rather than the legal causes of action asserted. *See id.* at 900.

Within this analytical framework, we first consider whether the parties had an enforceable agreement to arbitrate—i.e., whether the agreement applies to the parties involved in the dispute. *See VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex.App.–Dallas 2013, no pet.). The Receiver appears to concede that, if the arbitration agreement is validly before this Court, [3] it applies only to the claims that the Receiver "inherited" from Santa Fe (the common-law claims) but does not apply to the claims that arose solely by virtue of the Receiver's appointment under the Insurance Code or that belong solely to Santa Fe's creditors (the UFTA claims). In an abundance of caution, however, we will consider whether the arbitration agreement binds the Receiver with respect to any of its claims.

■ Under receivership law generally, a receiver is an officer of the court, "the

---

3. The Receiver contends that the legal representation agreement was "never proffered or admitted into evidence" at the hearing before the trial court and, therefore, cannot be considered by this Court to support the first step of the analysis. However, the agreement was attached to and incorporated by reference into Rich's motion to compel, which was verified by Rich to acknowledge that "every statement" in the portion of his motion referring to the legal representation agreement was "true and correct" and within his personal knowledge. Furthermore, the Receiver did not contest the authenticity of the agreement or raise any defects in the form of Rich's verification or otherwise object to the agreement's consideration by the court and even referred to it in its pleadings and at the hearing. We will, therefore, consider the agreement as evidence properly before us and the trial court. *See Mondesir v. Luby's Rests., Ltd. P'ship*, No. 01–09–00402–CV, 2010 WL 5060573, at *2 (Tex.App.–Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem.op.) (objections to defects in form of supporting attachments to summary-judgment motion must be in writing and ruled on or else party waives issue on appeal); *In re Jebbia*, 26 S.W.3d 753, 757 (Tex.App.–Houston [14th Dist.] 2000, no pet.) (orig.proceeding) (motion to compel arbitration is subject to same evidentiary standards as motion for partial summary judgment); *see also* Tex. R. Civ. P. 166a(f).

medium through which the court acts. He is a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership." *Security Trust Co. of Austin v. Lipscomb Cnty.*, 142 Tex. 572, 180 S.W.2d 151, 158 (1944). Under the Insurance Code, the Special Deputy Receiver is granted the power to "prosecute any action that may exist on behalf of the creditors, members, policyholders, shareholders of the insurer, or the public against any person, except to the extent that a claim is personal to a specific creditor, member, policyholder, or shareholder and recovery on such claim would not inure to the benefit of the estate" and "is vested with all the rights of the entity" in receivership. Tex. Ins. Code § 443.154(m), (w).

 "When a receiver sues for the entity's claims, the receiver generally stands in the shoes of that entity, possessing no greater rights than the entity had and subject to any agreements the entity entered." *Forex Capital Mkts., LLC v. Crawford*, No. 05–14–00341–CV, 2014 WL 7498051, at *3 (Tex.App.–Dallas Dec. 31, 2014, pet. denied) (mem.op.); *see El Paso Elec. Co. v. Texas Dep't of Ins.*, 937 S.W.2d 432, 436 (Tex.1996) (insurance receiver "stands in the shoes" of insurer for purposes of asserting insurer's rights on behalf of its creditors and "has no greater rights than [it] would have if [it] were the party"); *Webb v. Reynolds Transp., Inc.*, 949 S.W.2d 364, 367 (Tex.App.–San Antonio 1997, no writ) (same). "A receiver is therefore bound to a receivership entity's agreement to arbitrate if the entity would have been subject to that agreement." *Forex Capital Mkts.*, 2014 WL 7498051, at *3; *see also Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 627 (6th Cir.2003) (bankruptcy receiver is bound to arbitration agreements to same extent that re-

ceivership entity would have been absent appointment of receiver); *Zaporozhets v. Court Appointed Receiver in Cause No. 12–DCV–199496*, No. 14–14–00143–CV, 2014 WL 5148151, at *2 (Tex.App.–Houston [14th Dist.] Oct. 14, 2014, no pet.) (mem.op.) (receiver of engineering firm held bound by arbitration agreement that firm entered into with accountant defendant in lawsuit for negligence and breach of fiduciary duty brought by receiver where liability arose from and must be determined by reference to contract containing arbitration provision).

Thus, if Santa Fe would be bound by the arbitration agreement with respect to particular claims, the Receiver would be bound on those "inherited" claims as well, but not for claims that Santa Fe itself could not have brought. *See Forex Capital Mkts.*, 2014 WL 7498051, at *3; *Glenn H. McCarthy, Inc. v. Knox*, 186 S.W.2d 832, 838 (Tex.Civ.App.—Galveston 1945, writ ref'd) (insurance company could not itself have maintained action for claims that could not accrue until corporation was adjudged insolvent); *see also In re Gandy*, 299 F.3d 489, 495–96 (5th Cir.2002) ("While it is generally accepted that a bankruptcy court has no discretion to refuse to compel arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b), this court has held that a bankruptcy court may decline to stay a proceeding whose underlying nature derives exclusively from the provisions of the Bankruptcy Code."); *In re National Gypsum*, 118 F.3d 1056, 1066–67 (5th Cir.1997) ("[W]e believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.*, whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code.").

We also find instructive the presence of what appellant deems a "savings clause" in the Insurance Code: "Except as to claims against the estate, nothing in this chapter deprives a party of any contractual right to pursue arbitration." Tex. Ins. Code § 443.005(e). If this provision did not contemplate circumstances under which a defendant sued by the receiver could seek to compel the receiver to arbitrate appropriate disputes, it would be rendered meaningless. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex.2008) (court must not interpret statute in manner that renders any part of it meaningless or superfluous). Accordingly, we hold that, for the actions belonging solely to the Receiver in its representative capacity or to parties other than Santa Fe (such as Santa Fe's creditors)—in this case, the statutory claims raised under the Insurance Code and UFTA—the Receiver is not bound by the arbitration agreement.[4] However, for the actions accruing independently of the Receiver's appointment and arising under the legal services agreement—in this case, the common-law claims asserting breach of fiduciary duty, conspiracy, and negligence—the Receiver, standing in the shoes of Santa Fe, is bound by the arbitration agreement to the same extent that Santa Fe is bound. Accordingly, we must consider the next step in the analysis for these common-law claims: whether they fall within the arbitration provision's scope, focusing on the factual allegations of the Receiver's complaint rather than the legal causes of action asserted. *See Prudential Secs. Inc.,* 909 S.W.2d at 899–900.

The key underlying, relevant factual allegation that the Receiver makes against Rich is that he billed Santa Fe for legal services that he did not perform for Santa Fe but instead performed for other clients affiliated therewith and that Rich knowingly accepted Santa Fe's payments for these mis-billed services. Construing the parties' agreement to arbitrate disputes "regarding payment" broadly, as we must do, we conclude that a disagreement about whether Rich billed Santa Fe for services he did not perform for that client may reasonably be considered a dispute regarding payment, regardless of the legal theory under which the Receiver seeks to recover. We conclude that the trial court could not reasonably, with "positive assurance," have determined that the arbitration provision is not susceptible of an interpretation that would cover the dispute about Santa Fe's payments to Rich with respect to the *Lincoln General* litigation, *see id.* at 899, and that, accordingly, the trial court abused its discretion in denying Rich's motion to compel with respect to the Receiver's common-law claims arising under the legal services agreement, *see In re 24R, Inc.,* 324 S.W.3d at 566.

---

4. Rich contends that because the "factual underpinnings" of the Receiver's statutory claims are "closely intertwined" with the common-law claims, the entire case is subject to arbitration, "lock, stock, and barrel." *See Jack B. Anglin Co.,* 842 S.W.2d at 270–71 (because plaintiff's tort claims related to alleged misrepresentations were "factually intertwined" with contract claim, tort claims were subject to arbitration even though "grounded in a legal theory distinct from its contract claim"). While this is the general rule for causes of action when the opposing parties (or those standing in their legal shoes) have agreed to arbitrate in the first place, Rich has cited no case law extending that general rule to parties who have not agreed to arbitrate, as we have determined is the case here when (1) the Receiver is acting in the capacity of the representative of Santa Fe's creditors on claims that did not belong to Santa Fe in the first place and whom Santa Fe could not have bound by its agreement to arbitrate and (2) statutory claims arose solely by virtue of the appointment of the Receiver.

## CONCLUSION

For the foregoing reasons, we reverse the district court's order with respect to the Receiver's common-law causes of action, render judgment ordering the Receiver to arbitrate its common-law causes of action against Rich, and affirm the district court's order denying appellant's motion to compel arbitration with respect to the Receiver's statutory causes of action.