**JACKSON v. BOWIE et al.**

**No. 3665.**

Court of Civil Appeals of Texas. El Paso.

Jan. 27, 1938.

Rehearing Denied Feb. 17, 1938.

McKenzie & Gamble, of El Paso, for appellant.

Travis White, Jones, Hardie, Grambling & Howell, and Norcop & Momsen, all of El Paso, for appellees.

NEALON, Chief Justice.

The parties will be referred to as they were designated in the trial court. Plaintiff H. P. Jackson, as receiver of Spears & Co., a corporation, sued to recover of defendants S. O. Pottorff, receiver of First National Bank of El Paso, Tex., W. T. Conley, receiver of Farmers Cottonseed Products Company, a corporation, and El Paso Electric Company the property described as "Group B" in a deed of trust, which was executed by Spears & Co. as of April 15, 1927, conveying to the defendant First National Bank of El Paso, Tex., as trustee, and to recover damages and to establish a lien upon the assets of the said receiver of the defendant the First National Bank of El Paso, Tex. Plaintiff H. P. Jackson was duly appointed and qualified as receiver of Spears & Co. April 27, 1932, in a cause pending in the district court of El Paso county, Thirty-fourth judicial district of Texas, styled Anna E.

Easton v. Spears & Co. During the pendency of the suit R. R. Bowie succeeded S. O. Pottorff as receiver of the Bank and was substituted as party defendant.

R. R. Bowie pleaded general demurrer, general denial, the four-year statute of limitation, and answered further that the Spears & Co. unpaid bonds were owned by corporations and individuals other than Spears & Co. (prior to the time of the appointment of a receiver for Spears & Co.) ; that none of said bonds were owned by Spears & Co. or owned by the receiver of Spears & Co.; that the receiver of Spears & Co. did not have any cause of action which may have existed against the defendant First National Bank of El Paso, Tex., or its receiver.

The receiver of Farmers Cottonseed Products Company answered that, prior to the filing of this suit, the receivership of said Farmers Cottonseed Products Company had been terminated and that he had been discharged as receiver. It is agreed that this was true.

It is stipulated that as to defendant El Paso Electric Company the judgment of the district court shall be affirmed.

The case was tried to a jury, to which the court submitted this question: "What do you find from a preponderance of the evidence was the market value of such property as was conveyed by Spears & Company to the Farmers Cottonseed Products Company as on the date of the 6th of June, 1930?" The jury answered $175,000.

Subsequent to the verdict and prior to judgment, E. P. Greenwood, who purchased the assets in the hands of the bank's receiver pendente lite, filed his intervention and cross-action and the court indorsed thereon his order, "that said plea be filed subject to the right of any party to this cause to move to strike same." The court sustained certain exceptions in plaintiff's motion to strike intervener's pleading, but permitted intervener to be heard as to the form of the judgment, and if he so desired to move for a new trial, except to the orders of the court thereon, and perfect appeal from any final orders.

Plaintiff filed a motion for judgment and defendant filed a motion for judgment non obstante veredicto, which was granted.

From this judgment plaintiff appealed.

From the evidence it appears that on April 15, 1927, Spears & Co. executed and delivered a deed of trust conveying to the First National Bank of El Paso, Tex., as trustee, certain assets described as "Group A" assets, consisting of farms in Hudspeth county, Tex., and "Group B" assets, consisting of certain land in El Paso county, Tex., together with all personal property thereon, which is more particularly described in the indenture, and which consisted of the machinery and other equipment used in operating a cotton seed oil mill upon said El Paso county lands. The original bonds, payment of which was intended to be secured by the deed of trust, are described in the following tabulation:

| Maturity Date | $500.00 | $1000.00 | Total Maturing |
|---|---|---|---|
| December 30, 1927 | 50 | | $ 25,000.00 |
| December 30, 1928 | 50 | | 25,000.00 |
| December 30, 1929 | 20 | 15 | 25,000.00 |
| December 30, 1930 | 16 | 17 | 25,000.00 |
| December 30, 1931 | 200 | 300 | 400,000.00 |

December 23, 1927, bonds in the total amount of $25,000 then due with all interest which was due on the entire bond issue were paid. On April 7, 1928, $76,000 and interest was paid, resulting in the aggregate payment of bonds in the principal amount of $101,000, being bonds numbered from 1 to 170, both inclusive. These payments were made without releasing any of the assets covered by the indenture.

The indenture provided that until default should be made by Spears & Co. that company might sell or dispose of the "Group B" assets, the clause in the indenture reading as follows: "The real property, premises, improvements, fixtures, machinery and equipment described in Group 'B', Parcels One and Two, may be sold or otherwise disposed of as a whole by the Company, provided that there be deposited with the Trustee in cash a sum not less than $150,000.00, which said sum shall be used by the Trustee as a sinking fund to purchase the entire bonds of this issue or to redeem same as provided in Article II hereof."

April 30, 1930, Spears & Co. conveyed 13.4 acres to the El Paso Electric Company for a consideration of $5,000 cash which was paid to the Bank. May 15, 1930, Spears & Co. conveyed the remaining "Group B" assets to Farmers Cottonseed Products Company (hereinafter styled Products Company). At the time these conveyances were executed and delivered by Spears & Co. no default had been made as to the principal of any of said bonds. When these transactions took place, Spears & Co. owed the Bank approximately $84,900, which had been borrowed to pay operating expenses,

water charges and taxes. This debt was unsecured. No money was paid to Spears & Co. when the deed to the Products Company was made. In this transaction Spears & Co. was represented by its president, J. B. Spears, and the bank by its president, F. M. Murchison. According to Spears, Murchison told him that, unless he signed the conveyance to the Products Company, the Bank would "close out on the whole thing"; that he, Spears, considered the Hudspeth county property the more valuable asset, and more than sufficient to pay the outstanding bonds of Spears & Co. At that time both groups of assets were subject to a lien in favor of Haymon Krupp to secure $20,000 borrowed by Spears & Co. to use in operating the properties. Murchison assured Spears that the bonds to be issued by the Products Company would belong to Spears & Co.

June 6, 1930, subsequent to said conveyance from Spears & Co. to the Products Company, the Bank, as trustee for the holders of Spears & Co.'s bonds, released the "Group B" assets from the lien of the deed of trust and caused the release to be recorded in the office of the county clerk of El Paso county, Tex.

The Products Company issued 2,500 shares of common stock of the par value of $100 per share. On the same day that it received the conveyance from Spears & Co. it issued 200 bonds of $500 each, secured by deed of trust on "Group B" assets, which, together with 1,990 shares of its stock issued in the name of W. T. Conley (who had been secured by the Bank to manage the mill), were turned over to the Bank; 440 shares of stock were sold to various individuals, to be paid for out of earnings, 70 shares remained in Conley's name; 500 shares of the stock received by the Bank and bonds in the face value of $10,000 were delivered in Haymon Krupp to satisfy his claim of $20,000; the bonds issued to Haymon Krupp subsequently passed to M. Bernard Krupp. $25,000 par value of the Products Company's bonds were sold to Frank P. Brown for $25,000 cash.

The ultimate disposition of the bonds of the Products Company and of the proceeds of such of them as were sold was:

| | |
|---|---|
| Applied to principal of Spears & Co. bonds | $44,000.00 |
| Applied to interest on Spears & Co. bonds.. | 3,966.89 |
| Delivered to H. Krupp | 10,000.00 |
| Used as operating capital for the Products Co. | 15,000.00 |
| Retained by Bank to secure Spears & Co. indebtedness to it | 27,033.11 |

At the time the lien securing the Products Company's bonded indebtedness was foreclosed the amount thereof owned by the Bank was $56,000 principal and $10,454 interest.

When the Products Company was incorporated, it was represented in the articles of incorporation that all of the capital stock had been subscribed and 50 per cent. thereof paid in. The manner of payment was thus explained by Murchison: The Bank took Conley's note for $125,000 and gave the new corporation credit for that amount. After the articles of incorporation were filed with the secretary of state, the credit in favor of the Products Company and the note of Conley were canceled by the Bank.

January 23, 1934, Brown, Pottorff, as receiver of the Bank, and M. Bernard Krupp recovered judgment on account of the debt evidenced by their bonds in the sum of $104,421, and foreclosure of their lien. January 27, 1934, W. T. Conley, who was then receiver of the Products Company, being thereunto authorized by the district court, conveyed said "Group B" assets to Brown, Pottorff, as receiver, and M. Bernard Krupp in the following proportions: 25/90 to Brown; 56/90 to Pottorff, as receiver; and 9/90 to Krupp. Conley was discharged as receiver.

By order of the court entered after due notice to interested parties, Jackson, as receiver of Spears & Co., was authorized to convey all of the assets of that corporation to United Farms Company, a corporation. Among these assets was included "Suit pending in the Forty-first District Court entitled H. P. Jackson v. Robert Bowie, Receiver, et al, No. 40965 on the docket of said Court, subject to all the terms and agreements now existing by H. P. Jackson and McKenzie and Gamble, attorneys for plaintiff in said suit, and with the right of the United Farms Company to continue the prosecution of said appeal in the name of H. P. Jackson, Receiver."

July 15, 1937, Mr. Jackson reported compliance with this order. On the same day his final report was approved and he was discharged as receiver.

## Opinion.

We are met at the threshold of this case with a motion to dismiss this appeal upon several grounds. Of these it is at present necessary to discuss but

one, the first, which is to the effect that, H. P. Jackson having been discharged as receiver, the appeal may not be prosecuted in his name. Amply supported by cited cases, as well as by subsequent opinions in Higgins v. South Texas Development Co., Tex.Civ.App., 21 S.W.2d 540, and Commercial Standard Ins. Co. v. Bessert, Tex.Civ.App., 37 S.W.2d 789, is the following text in 1 Tex.Jur. p. 88: "The general rule is that a purchaser pendente lite need not be made a party to the record; he is not even a necessary party, but the suit may proceed in the name of the original parties, for the assignee takes subject to the final adjudication between the original litigants, and a judgment would be a complete bar to any suit or claim on the part of either the assignor or assignee."

In deference to these authorities, and because the remaining grounds urged deal with the merits of the controversy rather than with the right of the assignees of the alleged cause of action to urge this appeal in the name of the assignor, the motion to dismiss is overruled.

It appears that the organization of the Products Company and the transfer of "Group B" assets to it, and the subsequent issuance of bonds and their deposit with the Bank, was the method designed by the Bank to obtain security for its theretofore unsecured demand against Spears & Co. It seems certain that had the Bank stopped at this point, no actionable wrong would have been committed in so far as the receiver of Spears & Co. and those represented by him are concerned, for the transfer was subject to the first lien to secure the original bond issue and the second lien in favor of Mr. Krupp. It is true that as against unsecured creditors it created a preference. But it is lawful in Texas for an insolvent corporation, which is at the time a going concern, to prefer one or more of its creditors, and there is no question as to the status of Spear & Co. as a going concern at the time of the various transactions which have been detailed. In fact, it kept going for nearly two years after the transfer to the Products Company. The validity of a preferential transfer under such conditions is upheld in Lyons-Thomas Hardware Co. v. Manufacturing Co., 86 Tex. 143, 24 S. W. 16, 22 L.R.A. 802, and Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949.

Nor does the fact that the property so incumbered may have exceeded in value the amount of the debt so secured militate against its validity, for as said by the Supreme Court, as to the rights of mortgagees, in Simmons Hdw. Co. v. Kaufman, 77 Tex. 131, 8 S.W. 283, 288: "They had only a lien for the amount of their debt, and this is all they could claim in any event. The excess over a sufficiency for this purpose is still subject to legal process for the satisfaction of the claims of other creditors; and hence, in a legal point of view, it is a matter of no moment to such creditors whether this excess is greater or less. It is not placed beyond their reach, and hence they are not defrauded."

Unless the receiver may exercise the right to challenge said transfer upon the theory that he represents the bondholders, there is nothing in the record that would sustain his challenge. It is not made to appear that any other creditors represented by him were creditors of Spears & Co. at the time the transfer was made nor at the time that the subsequent release of the first lien was executed. Therefore, if the receiver has such cause of action, it must be upon the theory that he represents the holders of original bonds. Riske v. Rotan Grocery Co., 37 Tex.Civ.App., 494, 84 S.W. 243; DeGarca v. Galvan, 55 Tex. 53.

The appellant seems to proceed upon the theory that the release of "Group B" assets from the lien of the original deed of trust, together with the transfer to the Products Company, was in violation of the Bank's duty as trustee, was made for its own benefit, and resulted, by reason of consequent impairment of the security, in a loss to the original bondholders. However, it is not made to appear in evidence that the "Group A" assets will not be sufficient to satisfy the balance due on said bonded indebtedness, which balance at the time of trial amounted to $339,000 principal. The evidence was that at that time the "Group A" assets were in the hands of the receiver and exceeded in value very greatly the amount they were pledged to secure. We think no question could be raised by the bondholders as to the authority of Spears & Co. to convey and of the trustee to release "Group B" assets, provided that from the considera-

tion therefor the sum of $150,000 had been deposited as a sinking fund to care for the balance then owing upon the original bonded indebtedness. Of the $150,000, $49,000 was subsequently paid, and the remedy of the bondholders, if they incurred a loss as a result of the transaction, would be limited to a recovery of $101,000 and interest. But conceding, for the sake of argument, without deciding, that the facts make such a case in favor of the bondholders, has the receiver a right to maintain the action? The record does not show the grounds for the appointment of a receiver. Nowhere does it appear that he was to function as a substitute trustee. Unquestionably he would have the right to maintain any action that the corporation could maintain. But the cause of action, if any, in the present case was not in the corporation. Until the release was executed, the security of the bondholders had not been impaired. No recovery could be had for the benefit of the stockholders since an incumbrance in favor of the bank and a sale of the incumbered property to satisfy the debt so secured were lawful proceedings. The wrong, if any were accomplished, was a transgression of the rights of the bondholders by the failure of duty upon the part of their representative, the trustee bank. In a cause of action so arising, neither the general creditors nor the stockholders of the corporation would have an actionable interest.

The liability, if any, of the erring trustee was a direct one in favor of the bondholders. As to the receiver's authority to sue in such a case, the same principle is applicable that controls in the enforcement of collateral or secondary liability assumed by stockholders to a corporation's creditors, and not to the corporation. In Hammond v. Cline, 170 Ind. 452, 84 N.E. 827, such a case was considered, and the court held that an action did not lie in favor of the receiver. Cases from a number of jurisdictions were cited to support the view.

■ As said by the United States Circuit Court of Appeals for the Eighth Circuit in Rockwood v. Foshay, 66 F.2d 625, 629: "It is well settled that, in the absence of statute, the receiver of an insolvent corporation makes his title through the corporation. While he represents creditors in the administration of the corporate estate, his trust relates only to some phase of the corporate assets, and not to assets which belong to the creditors individually, or as a body. Jacobson v. Allen (C.C.) 12 F. 454, 456, 457. This rule has received consistent recognition in the Supreme Court of the United States."

In the light of these authorities we hold that receiver Jackson had no cause of action against the bank or its receiver for the wrong the bank is alleged to have inflicted upon the bondholders by releasing the deed of trust lien.

■ While complaint is made as to the method of incorporating the Products Company, this is not a suit to recover on account of the Bank's action in seizing the capital assets of the Products Company to satisfy Conley's note, or against Conley upon an unpaid stock subscription if the $125,000 did not actually come under the dominion of the Products Company, or against the Bank under the doctrine enunciated in Golden v. Cervenka, 278 Ill. 409, 116 N.E. 273, and we think irregularities in the incorporation and organization of the Farms Products Company are not pertinent to the issues here made.

Though many interesting questions have been raised by brief and argument, we have discussed only those we deemed controlling. However, all assignments have been considered. We find no reversible error in the record.

Judgment is affirmed.

HIGGINS, J., was disqualified and did not participate in this case.