**C. H. LANGDEAU, Receiver of General American Casualty Company, Appellant,**

v.

**John L. DICK et al., Appellees.**

**No. 10941.**

Court of Civil Appeals of Texas.

Austin.

March 14, 1962.

Rehearing Denied April 4, 1962.

Motion to Set Aside Judgment Denied
May 2, 1962.

Cecil C. Rotsch, John R. Grace, Harold G. Kennedy, Austin, for appellant.

Maverick, Tynan & Gochman, San Antonio, Smith, McIlheran & Jenkines, Weslaco, for appellees.

RICHARDS, Justice.

Suit was brought by C. H. Langdeau as receiver of General American Casualty Company against John L. Dick et ux. to recover upon their promissory note dated December 26, 1952 in the sum of $6,000.00 to General American Casualty Company in payment for six $1,000.00 5% Debenture Bonds of General American Casualty Company, Series 1952, and to foreclose a deed of trust lien on certain real estate under a deed of trust executed by Dick et ux. as security for the note. General American Casualty Company was placed in temporary receivership in the 126th District Court of Travis County, Texas on June 17, 1954 and C. H. Langdeau is its receiver.

Dick et ux. having answered only by general denial, Langdeau filed motion for summary judgment based on pleadings filed and exhibits thereto attached pursuant to Rule 166–A, Texas Rules of Civil Procedure. Dick et ux. thereupon filed their first amended original answer admitting execution of

the note and deed of trust but alleging that the note and deed of trust were void or voidable because the execution thereof was induced by fraud, misrepresentation, concealment and in violation of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq. and additionally that they had exercised their option to cancel the contract for the purchase of the Debenture Bonds because General American Casualty Company or its successors had failed and refused to pay installments of interest on the bonds for more than thirty days after the interest became due, thereby permitting them to exercise their option to cancel and terminate the bond purchase agreement, which pleading was controverted by Langdeau in a supplemental petition.

After filing their first amended original answer Dick et ux. then filed their answer to Langdeau's motion for summary judgment as follows:

"Defendants' first amended original answer, filed herein, raises fact issues of misrepresentation, fraud, concealment and in violation of the Securities Act of 1933, all of which are genuine issues of material fact, which require trial."

and in the same instrument filed their motion for summary judgment against Langdeau on the ground that the deed of trust and note attached to Langdeau's motion for summary judgment revealed that the note and deed of trust are subject to termination and cancellation by Dick et ux. and that the same had been cancelled and terminated and therefore there is no genuine issue of material fact which would entitle Langdeau to judgment, attaching thereto an affidavit executed by their attorney, Garland F. Smith. Langdeau filed his answer to defendants' motion for summary judgment consisting of special exceptions and a denial that the provisions in the deed of trust providing for the cancellation and termination of the note and deed of trust was available against him as receiver, attaching Langdeau's affidavit stating that prior to the date General American Casualty Company was placed in receivership and also as of June 1, 1954, the note and deed of trust sued upon were not cancelled and terminated.

Before either of the motions for summary judgment were submitted to the Trial Court Dick et ux. filed a cross-action against Langdeau as cross-defendant joined therein as cross-plaintiffs by R. Gordon Pierce et ux. and D. H. Zachman et ux., in which cross-action each of the cross-plaintiffs sought to cancel, rescind and recover from Langdeau the notes and deeds of trust given by them for the purchase of the Debenture Bonds, Series 1952, of the General American Casualty Company in the case of Dick et ux.; of sixteen $1,000.00 5% Debenture Bonds of Alamo Casualty Company, Series 1952, in the case of Pierce et ux.; and of ten $1,000.00 5% Debenture Bonds of Alamo Casualty Company, Series 1952, in the case of Zachman et ux., Alamo Casualty Company having been the predecessor of and merged into General American Casualty Company prior to receivership. Each of the promissory notes in question were secured by deeds of trust on real estate executed by cross-plaintiffs as security for the notes given to the respective companies as consideration for the purchase of the bonds.

As their basis for cancellation, rescission and recovery of the notes and deeds of trust, all cross-plaintiffs alleged that the notes and deeds of trust were secured by fraud, misrepresentation and deceit and in violation of the National Securities Act of 1933 and the mail fraud section thereof by General American Casualty Company as set forth in detail in the first amended original answer of defendants John L. Dick et ux. and which allegations contained "in said answer in Paragraphs I through XVI, all of which are hereby adopted and made a part hereof to assert affirmatively Plaintiff's cross-action for fraud, deceit, violation of the Securities Act, assertion of the Statutes of Limitation and all other matters pled therein."

Dick et ux. then filed their first amended motion for summary judgment alleging that there was no genuine issue as to any material facts and that on the basis of the pleadings, exhibits and affidavits attached thereto and depositions taken in connection with the receivership of General American Casualty Company, of which the Trial Court had judicial knowledge, they were entitled to summary judgment as a matter of law upon the grounds that (1) they had exercised their right to cancel and terminate the bond purchase contract agreement under its provisions; (2) the note was without consideration and/or (3) the consideration of the note failed; (4) the note was given for bonds in violation of Art. XII, Sec. 6, of the Constitution of and the laws of the State of Texas, including Art. 1348, Texas Civil Statutes, since the note was not money paid, labor performed, or property received and therefore void or voidable; (5) that General American Casualty Company at the time the note was issued was insolvent and doing business in violation of the laws of Texas prohibiting insolvent corporations to operate in Texas, especially Art. 1379, Texas Civil Statutes, and the bond purchase contract including the notes was therefore void or voidable as a matter of law; (6) that cross-plaintiffs are entitled to set-off the amount of the bonds against the amount of the note; and (7) that the note and deed of trust were executed as a result of fraud perpetrated by the agents, employees, officers and directors of General American Casualty Company, of which fraud the Court has judicial knowledge. Motions for summary judgment were filed by Pierce et ux. and Zachman et ux. based upon the same grounds alleged in the Dick motion but omitting the 7th ground. Each of the motions for summary judgment was supported by the affidavits of Garland F. Smith, attorney for each of the plaintiffs in the cross-action, which will be adverted to later in this opinion, the cross-plaintiffs and one Spencer R. Bowyer.

Langdeau filed unsworn answers to the cross-actions which consisted of special exceptions, pleas of estoppel, laches, waiver, and general and special denials and answers to the motions for summary judgment filed by the various cross-plaintiffs stating that fact issues were raised as to each of the grounds upon which relief was sought in the motions for summary judgment. The answers to the motions for summary judgment were not sworn to nor were they supported by controverting affidavits.

Prior to the hearing on the various motions for summary judgment the Trial Court overruled all the special exceptions contained in Langdeau's first supplemental petition and his answers to each of the cross-actions brought by the cross-plaintiffs. On the hearing of the motions for summary judgment filed by cross-plaintiffs Dick et ux., Pierce et ux., and Zachman et ux., the Trial Court considered the pleadings and exhibits attached thereto and the motions for summary judgment together with the affidavits and exhibits attached thereto and found that there was an absence of any genuine issue as to any material fact relating to the defenses raised against the notes described in the cross-actions and that Langdeau was not entitled to recover on the notes described in the cross-actions

The Court then entered judgment that Langdeau take nothing by his suit and cancelled, released, rescinded and declared to be null and void all of the notes executed by the cross-plaintiffs together with the deeds of trust securing payment thereof. The Court further ordered that the various Debenture Bonds of General American Casualty Company and Alamo Casualty Company be delivered by the cross-plaintiffs to the Clerk of the District Court of Travis County who was then instructed to deliver them to Langdeau as receiver for the General American Casualty Company, from which judgment Langdeau, Receiver of General American Casualty Company as cross-defendant, has perfected his appeal herein.

Langdeau as Receiver of General American Casualty Company will be hereinafter referred to as appellant, John L. Dick et ux., R. Gordon Pierce et ux. and D. H. Zachman et ux. will be referred to as appellees and General American Casualty Company and Alamo Casualty Company will be referred to as Insurance Company.

Appellant bases this appeal upon four points of error. We will first discuss his fourth point of error, as follows:

"The Trial Court erred in granting appellees' motions for summary judgment on the grounds; (1) that appellees were entitled to cancel the notes in the exercise of a contract right or option; (2) that said notes were given without consideration and/or the consideration for such notes failed; (3) that the bonds were given in violation of Article 12, Section 6, Texas Constitution, and Statutes of Texas, including Article 1348, Texas Civil Statutes; (4) that the notes and bond purchase contract were void or voidable inasmuch as the insurance company or companies, at the time of the issuance of the notes, were insolvent, but doing business in violation of the laws of Texas prohibiting insolvent corporations to operate in Texas, especially Article 1379, Texas Civil Statutes; or (5) that said notes and deeds of trust were executed as a result of fraud perpetrated by the agents, employees, officers and directors of the insurance company or companies upon appellees; because a material question of fact is raised by the pleadings as to each of such grounds."

█ This is an appeal from the granting of a summary judgment under Rule 166–A, Texas Rules of Civil Procedure, Subsection (c) of which provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that,

except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

This rule has been construed as allowing summary judgment only when there is no disputed fact issue and it is the duty of the Court hearing the motion for summary judgment to determine if there are any issues of fact to be tried. The burden of proof that there is no genuine issue of any material fact is upon the movant and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931. Thus, if there is a genuine issue as to any material fact summary judgment will not lie.

But if no genuine issue of material fact exists as to any of the seven grounds asserted by appellees for which summary judgment would be granted as a matter of law, the judgment of the Trial Court should not be disturbed. It is therefore necessary to examine each ground in order to ascertain the legal effect thereof as a basis for judgment absent any genuine issue of material fact.

The transactions between the Insurance Company and the appellees which form the basis of the present controversy consist of the making of contracts by appellees with the Insurance Company for the purchase of 5% debenture bonds or notes issued by the Insurance Company. As an illustration, appellees Dick et ux. executed on December 26, 1952 their promissory note in the sum of $6,000.00, due on or before December 26, 1962, with interest thereon payable at the rate of 2% semi-annually from date until paid, which note was secured by a deed of trust on certain lands situated in Hidalgo County, Texas. The deed of trust was in ordinary form but contained this additional stipulation:

"The above described note is given for the purpose of purchasing by party

of the first part of $6,000.00 in Debenture Bonds of General American Casualty Company, Series 1952, dated December 1, 1952, being bonds numbered 15 through 20, both inclusive, which bonds bear interest at the rate of 5% per annum, *and it is understood and agreed between the undersigned and General American Casualty Company that in the event General American Casualty Company, its successors or assigns fails or refuses to pay any installment of interest on the bonds, or either of them, within thirty days after the same shall become due and payable, according to the terms thereof, thereupon the undersigned, his heirs, executors, administrators or assigns, shall have the right and option to cancel and terminate this deed of trust and bond purchase agreement,* and upon the surrender by the undersigned, his heirs, executors, administrators or assigns, to General American Casualty Company, its successors or assigns, of all of the bonds above mentioned, thereupon this deed of trust shall be of no further force and effect, and shall be fully released; provided, however, that the rights of General American Casualty Company hereunder shall not be impaired or otherwise affected by such right and option so given to the undersigned, his heirs, executors, administrators or assigns to cancel and terminate this deed of trust. *It is further understood and agreed that the undersigned, holder of the bonds, will not sell or convey same except to General American Casualty Company for the purpose of retiring mortgage loan."* Italics supplied.

As a part of the contract the Insurance Company delivered to Dick et ux. six $1,000.00 debenture bonds dated December 1, 1952 and due December 1, 1962, with an option to redeem on December 1, 1957. Attached to each bond were 20 interest coupons, each in the principal sum of $25.00 which matured on June 1st and December 1st of each year beginning June 1, 1953. Also attached to the bonds were 5 coupons known as "principal sum reduction" coupons, each in the sum of $200.00, maturing on December 1, 1952 "or any interest due date thereafter" and annually thereafter, which the Insurance Company agreed to pay at the option of the holder.

Each bond also contained the following recitations:

"3. This issue of Debenture Bonds is secured by a pledge of the surplus funds and the Company agrees to set aside out of the surplus and/or surplus profits, an amount not to exceed the equivilent of two percent (2%) of the premium income of the previous six (6) months on each interest due date, which amount shall be sufficient to provide one twentieth (1/20) of· the proportionate part of the principal total of the issue sold and the accrued interest to that date.

"4. From this fund on each interest paying date, the Company will pay, first, the interest due and accrued as of said date; and, secondly from the balance in the sinking fund it will pay Principal Sum Reduction Coupons tendered and will pay or call for redemption the principal sum balances of this issue, December 1, 1962, with option to redeem all Principal Sum balances December 1, 1957 at the then Principal Sum value plus one percent (1%) premium.

"5. Provided that the Company pledges it's full faith and credit to all agreements herein and further provided that prior to maturity these bonds shall not otherwise be construed as a liability of the General American Casualty Company.

"6. In the event of the sale, reinsurance, liquidation or consolidation of the General American Casualty Company, or any part thereof, the obligation to make payments as provided shall

not in any manner be reduced thereby and shall be assumed by and be binding upon any successor, assign or reinsurer of General American Casualty Company, according to the terms of said obligation.

"7. The conversion and optional provisions stated by the Company on reverse side hereof together with coupons attached are hereby made a part of this bond."

Among the conversion and optional privileges referred to in par. 7 of the debenture bond, it is recited that interest coupons are withdrawable with interest on dates shown thereon each year in cash. There is also typewritten upon the same page "THIS BOND IS SUBJECT TO CONTRACT ATTACHED." The transcript of the record fails to reveal any contract attached to the bond, but since both appellant and appellees have treated the provisions in the note, deed of trust and the bond as constituting a contract, it is presumed that the words "contract attached" refer to the note and deed of trust with particular reference to the above quoted option to cancel contained in the deed of trust.

■ Ordinarily the words "debenture bond" means a note or series of notes issued by a corporation as authorized by its Board of Directors providing for interest at a specified rate and constitute written promises to repay money loaned to the corporation. The principal and interest of these notes may or may not be payable out of specified net profits of the corporation and are generally issued by the corporation as a means of raising capital funds rather than by the issuance and sale of preferred stock. 19 C.J.S. Corporations § 1147, p. 723; Hildebrand on Corporations, Sec. 480. The purchasers of such debenture bonds or notes thereby become preferred creditors of the corporation upon liquidation to the extent only of the profits from which the bond or note is payable, otherwise they are considered as ordinary creditors.

However, in the instant case, it is readily apparent that the appellees in contracting to purchase the debenture bonds or notes from the Insurance Company did not become creditors of the Insurance Company for the following reasons. Under the terms of the contract appellees Dick et ux. were to receive from the Insurance Company on each bond the sum of $25.00 payable semi-annually or a total of $300.00 per year. In turn, appellees obligated themselves to pay to the Insurance Company 2% interest upon their notes payable semi-annually or a total of $120.00 annually, thereby creating a balance due them from the Insurance Company in the sum of $180.00 annually for 10 years or a total sum of $1800.00 in excess of their obligation to the Insurance Company on their notes. In addition, the 5 principal sum reduction coupons on each bond payable on December 1 of each year beginning December 1, 1953, each in the sum of $200.00, would be payable to retire the principal of the note given for the purchase of the bonds in question on December 1, 1957, if the Insurance Company desired to avail itself of the option set forth in par. 4 of the debenture bond and which, in any event, would be due and payable upon December 1, 1962, the date of the maturity of appellees' notes.

Stated differently, appellees were to pay no consideration whatever to the Insurance Company for the purchase of the debenture bonds, but on the contrary if the Insurance Company had performed the contracts according to their terms, appellees would have received an annual profit on each of the bonds of $150.00, if the Insurance Company had exercised its option, or $300.00 on December 1, 1962, for which appellees had not paid any monetary consideration to the Insurance Company.

Since par. 5 of the bond provides that "the Company pledges its full faith and credit to all agreements herein" and that prior to the maturity the bond shall not otherwise be construed as a liability of the Company, appellees were placed upon notice

that the Insurance Company would not be required to list any of the bonds as liabilities of the Company upon its books, financial reports or records prior to the maturity date thereof.

However, no such restriction was placed upon the use by the Insurance Company of appellees' notes secured by the deed of trust liens on the real estate in Hidalgo County, Texas as capital assets of the Insurance Company or their deposit with the State Treasurer for the protection of the Company's bondholders as provided by Art. 8.05 of the Texas Insurance Code, V.A.T.S. The note and deed of trust of appellees Dick et ux. were so deposited with the State Treasurer as shown by the record. Since the record does not affirmatively show that either the Pierce or Zachman notes were deposited by the Insurance Company with the State Treasurer under the provisions of Art. 8.05, there is no presumption that they were so deposited. From the clear and unambiguous terms of the contract between each of the appellees and the Insurance Company it is apparent that appellees are not creditors of the Insurance Company after payment of their notes except to the extent of the unpaid interest coupons and principal sum reduction coupons attached to each of the bonds, since appellees did not pay any valuable monetary consideration to the Insurance Company as a basis for the purchase of the bonds.

But the Insurance Company did agree to pay to appellees a monetary consideration of $50.00 per annum on each of the debenture bonds for the use of the notes and deed of trust liens as part of the capital assets of the Insurance Company to the same extent as though appellees had contracted to purchase preferred stock of the Insurance Company with a 5% dividend payable out of the surplus or surplus profits of the company's business, which preferred stock would be a part of the Insurance Company's capital. This is emphasized by the provision that each bond shall not otherwise be construed as a liability of the Insurance Company. Certainly the policy-holders and the general public had the right to rely upon appellees' notes which were secured by liens upon real estate as forming a part of the capital assets of the Insurance Company without any corresponding liability.

■ Appellees having been placed upon full notice of the various recitations in the debenture bonds, notes and deeds of trust and having neither loaned nor paid any monetary consideration whatever to the Insurance Company in return for the annual profits which they were to receive from the Insurance Company for the use of their notes as capital assets, it is our opinion and we hold that the rights and liabilities of each of the appellees with respect to their contracts for the purchase of the debenture bonds are analogous to the rights and liabilities of persons who agree to purchase shares of preferred stock of the Insurance Company executing their promissory notes as consideration therefor, with the exception that appellees are creditors of the Insurance Company to the extent of the unpaid semi-annual interest coupons and principal reduction coupons.

Appellees' first ground or theory in support of the summary judgment is that they had exercised their right to cancel and terminate the bond purchase contract agreement under the cancellation provision contained in the deed of trust above referred to. It is undisputed from the record that appellees Dick et ux. could not have exercised their option to cancel the agreement because of the failure of the Insurance Company to pay the interest coupons which matured June 1, 1954 since the option to cancel could only be exercised in the event the interest coupons due June 1, 1954 were not paid by the Company on or before July 1, 1954. The Insurance Company having been placed in the hands of the receiver on June 17, 1954, their rights and liabilities on their contracts became fixed on that date by Sec. 2(c), Art. 21.28, Texas Insurance Code. Appellees Pierce et ux. and Zachman et ux. admitted in their cross-actions

that although the cancellation provision in the deeds of trust executed by them provided for the exercise of such option in the event the interest coupon due June 1, 1954 was not paid by the Company within the expiration of ten days from its due date, which period would have elapsed prior to the institution of receivership proceedings on June 17, 1954, they then did not attempt to exercise such option until on or about December 1, 1954, the date upon which such appellees and others instituted an action in the United States District Court for the Southern District of Texas for the purpose of cancelling and rescinding the transaction.

Since the rights of all parties had become fixed on June 17, 1954 and appellees Pierce et ux. and Zachman et ux. not having exercised their options to cancel their contracts prior thereto, all appellees' assertions of the rights of cancellation and rescission as grounds for the rendition of the summary judgment are without legal basis.

■ Appellees assert as their second and third grounds for summary judgment that the notes were without consideration or that the consideration of the notes failed. As stated above, the consideration for appellees executing the notes was the agreement of the Insurance Company to pay to appellees the difference between 5% annual interest upon the bonds and the 2% interest payable to the Insurance Company upon the notes resulting in appellees paying no monetary consideration to the Insurance Company for the execution of the notes. When the receivership proceedings were instituted on June 17, 1954 the rights and liabilities of all parties became fixed and appellant was under no obligation to pay the interest coupons until the process of the liquidation reached the stage for the distribution of the assets of the receivership estate which were available for the payment of appellees' claims. In this connection it is admitted that none of the appellees ever filed any

claims against the receivership estate within the time or as required by Sec. 3(a), (b) or (d), Art. 21.28, Texas Insurance Code.

As to failure of consideration the record shows that appellees Dick et ux. failed to make the payment of the 2% semi-annual interest on their note which became due June 1, 1954, the same date upon which the semi-annual interest coupons attached to their bonds became also due and payable by the Insurance Company. As a result if there was a failure of consideration it became a mutual failure of consideration by both the Insurance Company and appellees. The record does not affirmatively disclose whether appellees Pierce et ux. and Zachman et ux. did or did not pay to the Insurance Company the semi-annual interest payments on their notes due June 1, 1954 although these appellees alleged, and it does not seem to be disputed, that the Insurance Company did fail to pay the semi-annual interest coupons attached to their bonds due on the same date.

It is our opinion that each of the grounds alleged by appellees that there was no consideration for the notes or that the consideration for the notes failed, does not constitute a ground for summary judgment as a matter of law.

■ Appellees' fourth ground that the note was given for bonds in violation of Art. XII, Sec. 6 of the Constitution of and the laws of the State of Texas and under Art. 1348, Vernon's Civil Statutes, does not constitute a legal ground for summary judgment as a matter of law.[1] Art. XII, Sec. 6, Constitution of Texas, Vernon's Ann.St., provides that no corporation shall issue stock or bonds except for money paid, labor done, or property actually received and a fictitious increase of stock or indebtedness shall be void.

In Thompson v. First State Bank of Amarillo, 109 Tex. 419, 211 S.W. 977, 978,

---

1. Since appellees' notes were secured by deed of trust liens upon real estate, they constituted "property" within the meaning of the constitutional provision. General Bonding & Casualty Co. v. Moseley, 110 Tex. 529, 222 S.W. 961.

979, it was held that under the above constitutional provision the giving of a note for stock is not a valid payment but that neither the stock issued nor the note given is void. As a result in a suit to enforce the note for the benefit of creditors the subscriber is estopped to assert the invalidity of the transaction. The basis for this ruling is in part as follows:

"Creditors dealing with a corporation have the right to assume that its capital has been or will be paid in accordance with law. It constitutes a warrant for the extension of credit. It, in effect, stands as a pledge for the security of the corporation's debts. Upon the corporation's insolvency, it becomes a trust fund for the protection of creditors. If it has not been paid up, they have the clear right to insist that it be paid up. The stockholder who has permitted himself to be held out as such, who has received and appropriated benefits from the corporate enterprise but has not paid for his stock, rests under the duty to pay for it. With the debts of the corporation unpaid, it is a fraud upon the innocent creditors, as well as a fraud upon the law, to release him from that duty.

" * * * With the bank possessed of the power to issue the stock, creditors without fault would have the right to assume that it was issued in a lawful manner. They would not be chargeable with notice of the facts which made the manner of its issuance unlawful. With this true, the estoppel which equity creates in their favor cannot be defeated by the fact that the transaction was, as between the parties, invalid. In all such cases equity refuses to permit the stockholder in default to plead his own wrong as a means of defeating his just obligation. As a matter of good conscience he should not be heard to plead it. In such situations equity is concerned in the stockholder's doing what he ought to do, rather than in his having done

what he ought not to have done. It therefore holds him estopped, and properly so."

■ In view of our holding that the rights and liabilities of appellees under their contracts for the purchase of the debenture bonds are analogous to the rights and liabilities of persons who subscribe for preferred stock in a corporation giving their promissory notes as a consideration therefor, we hold that appellees having permitted the Insurance Company to use their notes as a part of the capital assets of the company upon which the policyholders and other creditors had the right to rely, appellees are now estopped to assert the invalidity of the transactions as being violative of the constitutional prohibition. Thompson v. First State Bank of Amarillo, supra; Davis v. Burns, Tex.Civ.App., 173 S.W. 476, 480, error ref.; McWhirter v. First State Bank of Amarillo, Tex.Civ.App., 182 S.W. 682, 685, error ref.; Forman v. Irby, Tex.Civ.App., 115 S.W.2d 1229, 1231, error ref.

■ Appellees' contention that the Insurance Company was insolvent at the time of the execution of the notes and was therefore doing business in violation of the laws of Texas prohibiting insolvent corporations to operate in Texas renders the bond purchase contract void or voidable as a matter of law is wholly without merit. Until the institution of the receivership proceedings the Insurance Company was engaged in business as a going concern with all the rights and privileges created by its charter. It was not until July 7, 1954 when the temporary receivership proceedings instituted on June 17, 1954 was made permanent under Court order that it could be conclusively presumed that the Insurance Company was insolvent. As a result, appellees' contention that the Insurance Company was insolvent at the time the notes were executed does not constitute any legal ground or basis upon which summary judgment could be granted. Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex.

143, 24 S.W. 16, 18, 22 L.R.A. 802; Jackson v. Bowie, Tex.Civ.App., 114 S.W.2d 342, 346, error dism. Appellees cite no authorities in support of their contention. Appellees' fifth ground states no basis for summary judgment as a matter of law.

For their sixth ground appellees assert that they are entitled to set off the amount of the bonds which they contracted to purchase against the amount of the notes given by them for the purchase of the bonds, citing numerous cases holding that setoff is available as an equitable defense in suits brought on promissory notes, which cases are not pertinent to the issues here involved.

Appellees then cite the general rule of law that when a receiver takes a claim in favor of the estate which he administers, such claim is subject to all equities then existing between the parties and as against the demand by the receiver a debtor is entitled to set off a claim in his favor *existing at the time when the receiver's title takes effect* which the law would have allowed as a counterclaim against the insolvent had there been no receivership. The allowance of the counterclaim in such a case does not give the debtor a preference over creditors in whose favor no counterclaim exists since it is only the amount due by the debtor to the insolvent which constitutes an asset for the payment of its creditors and which passes to the receiver for such purpose, citing 38 Tex.Jur. Sec. 49, p. 76 and Cocke v. Wright, Tex.Civ. App., 299 S.W. 446.

While the foregoing general statement of the law is correct, we do not think it is applicable in the instant case in view of the holding in Cocke v. Wright, Tex.Civ.App., 23 S.W.2d 499, aff., Tex.Com.App., 39 S.W.2d 590, wherein it was held in a factual situation somewhat similar to the instant case that an obligation on a note which constituted part of the assets of an insolvent corporation could not be offset or credited with the amount of a claim to be discharged out of the assets of the insolvent corporation in favor of the maker of the note. Appellees' claim of setoff does not as a matter of law form any legal basis for the rendition of a summary judgment in their favor. Sec. 3(g), Art. 21.28, Texas Insurance Code.

Since we have held that each of the first six grounds upon which all appellees rely to sustain the rendition of a summary judgment in their favor are untenable as a matter of law, there being no genuine issues of material fact involved, the sole remaining basis or ground for the rendition of the summary judgment is that alleged in the motion of appellees Dick et ux. that their note and deed of trust were executed as a result of fraud perpetrated by the agents, employees, officers and directors of the Insurance Company, of which fraud the Court has judicial notice. As noted above, appellees Pierce et ux. and Zachman et ux. did not allege the ground of fraud as a basis for the summary judgment although it was affirmatively pleaded in their respective cross-actions against appellant. We therefore shall consider only the ground of fraud raised in the motion for summary judgment filed by appellees Dick et ux.

In their answer to the original motion for summary judgment filed by appellant, appellees Dick et ux. categorically admitted that their first amended original answer raised fact issues of misrepresentations, fraud, concealment and violation of the Securities Act of 1933, all of which were genuine issues of material fact which require trial. This pleading was never abandoned but instead was specifically adopted in the cross-action of appellees and the ground of fraud and misrepresentation was raised in addition to the other grounds or bases in their motion for summary judgment.

We agree with the position taken by the appellees in their pleading that as to their pleas of fraud and misrepresentation, genuine issues of material fact were presented.

There is an additional reason why the motion for summary judgment filed by Dick

et ux. could not be sustained on the ground that there were no genuine issues of material fact under the allegations of fraud alleged to have been perpetrated by the officers, directors, agents and employees of the Insurance Company, "of which fraud the court has judicial knowledge."

Attached to the amended motion for summary judgment filed by appellees Dick et ux. are the affidavits of Garland F. Smith, their attorney, and Spencer R. Bowyer. It would serve no useful purpose and unduly prolong this already lengthy opinion to discuss in detail the contents of the Garland F. Smith affidavit in order to demonstrate that it does not comply with the provisions of Rule 166–A(c), Texas Rules of Civil Procedure. The affidavit is profuse with legal conclusions of the affiant as to matters which he asserts are within the judicial knowledge of the Court by referring to proceedings in Civil Action 927 in the United States District Court for the Southern District of Texas, Brownsville Division, the proceedings in Cause No. 97,864, the original receivership proceedings of General American Casualty Company, and in Cause No. 103,084, styled J. D. Wheeler, Receiver v. C. B. Erwin et al., both of which actions are pending in the same Trial Court having jurisdiction of the instant case.

■ While the affidavit refers to the various pleadings, sworn testimony and depositions in the original receivership proceedings as well as to the other two suits referred to, no specific reference is made to any pleadings, testimony, deposition, document, letter or statement nor are copies thereof attached to the affidavit. The failure to attach copies of the pleadings and documentary evidence in the various causes referred to in the Smith affidavit renders such affidavit a nullity under the ruling of the Supreme Court of Texas in Gardner v. Martin et al., Tex., 345 S.W.2d 274. The affidavit of Spencer R. Bowyer also is not in conformity with Rule 166–A(c), T.R.C.P. for the same reasons.

In his answers to appellees' cross-actions, appellant specially pleaded estoppel, waiver and laches as defenses to the allegations of fraud and misrepresentation on the part of the officers, directors, employees and agents of the Insurance Company contained in the pleadings in the cross-actions of appellees, which are primarily questions of fact.

■ However the burden of proof is upon appellees to show not only every fact essential to establish fraud and misrepresentation on the part of the Insurance Company but also that the rights of the policyholders and other creditors of the Insurance Company had accrued prior to the time appellees permitted the notes secured by the deed of trust liens to be used by the Insurance Company as a part of its capital assets. This is an essential element of the defense raised by appellees Dick et ux. in the suit by appellant as the receiver representing the policyholders and creditors upon the note and deed of trust and it was incumbent upon appellees both to allege and prove it.

■ It is also an essential element of the causes of action alleged by all appellees in their cross-actions against appellant for the cancellation and rescission of the notes and deeds of trust on the ground of fraud and misrepresentation and it was incumbent upon them both to allege and prove it. In any event whether appellees were estopped to rescind their contracts of purchase on the grounds of fraud and misrepresentation constituted a genuine issue of material fact for the decision of the Trial Court upon the merits. Chapman v. Harris, Tex.Civ.App., 275 S.W. 75, 79, no writ history; 22 Tex. Jur.2d "Estoppel", Sec. 21.

Appellant's defense of estoppel should be considered by the Trial Court under the rules of law enunciated in Thompson v. First State Bank of Amarillo, supra; Davis v. Burns, supra; McWhirter v. First State Bank of Amarillo, supra, and Forman v. Irby, supra.

Appellant's first, second and third points of error and the fifth ground of the fourth point of error are sustained and all of appellees' cross-points of error are overruled.

The judgment of the Trial Court granting the motions for summary judgment in favor of all appellees and against appellant being erroneous as a matter of law is reversed and this cause is remanded to the Trial Court for further proceedings in accord with this opinion.

Reversed and remanded with instructions.

On Appellees' Motion for Rehearing

In appellees' motion for rehearing our attention is directed to the statement in our original opinion that "The Insurance Company having been placed in the hands of the receiver on June 17, 1954, their rights and liabilities on their contracts became fixed on that date by Sec. 2(c), Art. 21.28, Texas Insurance Code," is erroneous because Sec. 2(c), Art. 21.28 did not become effective until September, 1955. Appellees' statement is correct.

 The enactment by the Legislature of Sec. 2(c), Art. 21.28, Texas Insurance Code, V.A.T.S., in 1955 however did not change the law as it existed in Texas prior thereto. The rights and status of creditors of a corporation become fixed as of the date of the appointment of a receiver even though it is not then known that the corporation is insolvent. McCormick v. Puritan Coal Mining Co. (U.S.C.A., Pa.) 28 F. 2d 331, cert. den., 278 U.S. 651, 49 S.Ct. 176, 73 L.Ed. 562; Baylor University v. Chester Savings Bank, Tex.Civ.App., 82 S.W.2d 738, 744, error ref.; 19 C.J.S. Corporations § 1492; 75 C.J.S. Receivers § 114.

Since the rights and liabilities of appellees had become fixed on June 17, 1954 under the above rule of law, their assertion of the right of cancellation and recission as a ground for the rendition of the summary judgment is without legal basis.

Appellees' motion for rehearing is overruled.

Motion overruled.

On Appellant's Motion to Set Aside Judgment

PER CURIAM.

Appellees John L. Dick, D. H. Zachman and R. G. Pierce have filed a motion to set aside the opinion and judgment filed and rendered herein on the ground that Associate Justice Richards who wrote such opinion is disqualified or should recuse himself because (1) "he was of counsel in the case" and [1] (2) "he advised and counseled with the State Board of Insurance of which appellant is a subordinate agency of the State, in matters directly affecting this litigation."

The claim that Justice Richards was counsel in this cause is based on the erroneous assertion that Justice Richards was an Assistant Attorney General on June 17, 1954, when the General American Casualty Company was placed in receivership at the instance of the State acting through the Attorney General.

Justice Richards was not employed by the Attorney General of Texas from September 1, 1953 through December 31, 1956, inclusive.

Appellees, conceding that Justice Richards did not participate in this case as counsel contend that he is nonetheless disqualified because the Attorney General during the time Justice Richards was one of his employees gave advice to the "old Board of Insurance Commissioners" which resulted in deceitful and fraudulent practices by General American Casualty Company in which appellees became enmeshed.

1. Art. V, Sec. 11, Texas Constitution, Vernon's Ann.St.

Appellees do not state that Justice Richards gave any of this advice, only that he was an employee of the Attorney General when such advice was given. Justice Richards denies that he was a party to the giving of any such advice.

 Justice Richards was not a first office Assistant of the Attorney General; hence Art. 4412, V.A.C.S. is not applicable. He was an employee of the Attorney General.[2] An employee is not responsible for the acts of his employer, although an employer is responsible for the acts of his employee performed in the scope of his employment. Applying these fundamental principles it follows that an Assistant Attorney General is not of counsel in every case in which the Attorney General may be of counsel, but that the Attorney General is of counsel in every case in which an Assistant Attorney General, as such, is properly of counsel. See: Prince v. State, 158 Tex.Cr.R. 65, 252 S.W.2d 945, 25 Tex.Jur. 292, Judges, Sec. 48.

The only legal ground upon which disqualification is sought, that he was of counsel in this case, is untenable.

 Appellees also seek to persuade Justice Richards not to sit in this case for the reason that his background of service with the Attorney General during the disturbing days of insurance company failures and frauds, and his participation in some phases of these controversies makes it inappropriate for him to take part in the decision of this case. This is a matter solely for his determination. Justice Richards declines to step down.

The motion is overruled.

Motion overruled.

RICHARDS, J., not sitting.

2. See Ch. 62, 57 Leg., First Called Sess. p. 262, authorizing the Attorney General to employ such personnel as are necessary to carry out his legal responsibilities. These persons are also, of course, employees of the State.