Nancy PETKOVSEK

v.

The BOARD OF PARDONS AND PAROLES OF the STATE OF TEXAS, et al.

No. 1:90CV360.

United States District Court, E.D. Texas, Beaumont Division.

Feb. 28, 1992.

---

1. The statute could not begin to run, in any event, until its effective date of October 17, 1986.

Richard N. Evans, II, Evans & Evans, Beaumont, Tex., for plaintiff.

Atty. Gen., State of Tex., General Litigation Div., Austin, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT TO ENFORCE SETTLEMENT AGREEMENT

SCHELL, District Judge.

CAME ON to be considered the Plaintiff Nancy Petkovsek's Motion for Judgment to Enforce Settlement Agreement in this cause, and the court, having considered the motion, the defendants' response, and the exhibits, is of the opinion that the motion should be GRANTED.

### FACTS

The plaintiff filed this suit to recover damages for personal injury and defamation allegedly caused by the Texas Board of Pardons and Paroles (Board). The plaintiff alleges that the Board officers conspired to cause her to be terminated in retaliation for speaking to the press and legislators about violations of law committed by Board employees. The plaintiff sued the Board under the Texas Whistle Blowers Act, Tex.Rev.Civ.Stat.Ann. art. 6252–16a, and the individual officers under 42 U.S.C. § 1983 for deprivation of her First Amendment rights under color of law. The Office of the Attorney General represented both the Board and the individual defendants. A settlement was negotiated by Suzanne Marshall, an Assistant Attorney General, and an offer was made by telephone. By letter of August 8, 1991, Marshall confirmed her unconditional offer in writing. This offer was accepted by letter dated August 12, 1991 from Richard Evans, the attorney for the plaintiff. The letter confirming the offer stated that Marshall had the authority to offer the plaintiff the sum of $52,500.00 to settle all causes of action against the Board and the individual defendants.

The settlement was announced to the court by the plaintiff and the case was then removed from the October 15, 1991 jury selection docket. The court then forward-ed to the parties a Special Order which instructed the parties to submit all necessary closing papers to the court by November 8, 1991. Responsibility for the case was then assumed by another Assistant Attorney General, Adrian Young, who requested an additional thirty days to conclude the settlement. On December 5, 1991, Mr. Young informed the court that the Texas Department of Criminal Justice (TDCJ) had determined that this case should not be settled. The defendants now wish to have the case reset for trial. The plaintiff then filed her motion to enforce the settlement.

The plaintiff claims that the settlement was valid and binding on the defendants from the date the plaintiff accepted the offer on August 12, 1991. The plaintiff contends that Marshall was authorized to enter into the settlement, since she was employed by the State of Texas as an Assistant Attorney General and she represented her authority on several occasions to the plaintiff.

The plaintiff also contends that the defendants should be estopped from denying the settlement. Petkovsek says she relied on the settlement to her detriment by passing up a trial date in the belief that the settlement would be paid as promised. The plaintiff further claims that the State ratified the settlement by proceeding as though the settlement would be consummated for three months after the settlement agreement.

The defendants claim that a settlement with the State of Texas or any state agency is, by law, tentative and conditional until all of the necessary state officers sign off on the agreement and the State Treasurer issues her warrant. The defendants cite the General Appropriations Act, Ch. 19, 1991 Tex. Session Law Service 431 which provides the following:

> [p]ayments for settlements and judgments for claims against state agencies that are payable under Chapters 101 and 104, Texas Civil Practice and Remedies Code annotated, as determined by the Attorney General, and Federal Court

Judgments shall be paid from special funds or local funds of the involved agency to the extent such funds are available, and then from General Revenue. Such funds are to be paid out by the Comptroller on vouchers drawn by the Attorney General and approved by the Governor. The Comptroller shall maintain records of such amounts paid from General Revenue and shall require agencies to reimburse General Revenue as special funds or local funds become available.

Defendants also cite the General Appropriations Act, Ch. 19, 1991 Tex.Session Law Service Sec. 65 at 1034–35 which states:

(1) None of the funds appropriated by this Act may be expended for payment of any judgment or settlement prosecuted by or defended by The Attorney General and obtained against the State of Texas or any state agency, except where it is specifically provided in an item or items of appropriation that the funds thereby appropriated may be used for the payment of such judgments.

(2) Payment of all judgments and settlements prosecuted by or defended by the Attorney General is subject to approval of the Attorney General as to form, content, and amount, and certification by the Attorney General that payment of such judgment or settlement is a legally enforceable obligation of the State of Texas. This provision shall apply equally to funds appropriated for expenditure through the State Treasury, as well as funds appropriated for expenditure from funds held in local banks.

The defendants further claim that Marshall told the plaintiff that the settlement would not be final until all necessary parties had joined the settlement. (Affidavit of Suzanne Formby Marshall). However, this assertion is disputed by the plaintiff and, in any event, such language is neither contained as a condition of the settlement in the letter which offered settlement, nor is such language in the proposed settlement agreement, which was drafted by Marshall.

## THE LAW

"Compromises of disputed claims are favored by the courts. (citations omitted).

Where the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). In *Cia Anon* the parties agreed to settle and informed the court. After the case was removed from the trial schedule, the defendant attempted to withdraw his attorney's authority to settle. The court stated, "[f]ederal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *Id.; Howard v. Chris–Craft*, 562 F.Supp. 932, 936 (E.D.Tex.1982). The court in *Cia Anon* did not agree with the defendant's contention that plaintiff's counsel could not rely on the representation of defendant's counsel as to his authority, because "[i]f such a position is meritorious, an attorney could never rely on the word of opposing counsel in determining authority." *Cia Anon* at 35–36.

In the case now before this court, the plaintiff negotiated and reached a settlement with Suzanne Marshall, the Assistant Attorney General. It is only now that a new Assistant Attorney General has taken over the case that the defendants and the State of Texas seek to escape the settlement agreement by insisting that Marshall had no authority to settle the case without the approval of other state officials. In the letter of August 8, 1991, Marshall stated that she was authorized to offer the plaintiff $52,500 to settle the claims against the Board and the individual defendants. (See Plaintiff's Exhibit "A"). In the same letter, she represents that her "clients would sincerely like to settle this case." (See Plaintiff's Exhibit "A"). After the unconditional settlement offer is accepted by letter of August 12, 1991, from the plaintiff's attorney (See Plaintiff's Exhibit "B"), Marshall represents, in a letter dated August 20, 1991, that she is "pleased that we were able to resolve this case in an amicable fashion." (See Plaintiff's Exhibit "C").

Furthermore, it is Marshall who draws up the settlement papers which state that all parties are authorized to enter into the settlement. (See Plaintiff's Exhibit "D"). The express written language of Marshall suggests a final settlement. Nowhere in her correspondence is there an indication that her offer was conditional and the settlement tentative.

As stated by the court in *Howard,* supra, because compromises of disputed claims are favored by the courts, "every reasonable presumption will be indulged in favor of a settlement made by an attorney duly employed." *Howard* at 936. "Federal courts have the inherent power to summarily enforce settlement agreements entered into by the parties litigant in a pending case." *Id.* State law cannot obstruct the court's "power to enforce agreements entered into in settlement of litigation." *Howard* at 938. "An offer [of settlement] becomes a binding contract when it is accepted by the other party according to its terms. After it is accepted, it cannot be withdrawn." *Howard* at 940; *Fail v. Lee,* 535 S.W.2d 203, 208 (Tex.Civ.App.—Fort Worth 1976). *See Stewart v. Mathes,* 528 S.W.2d 116, 118–119 (Tex.Civ.App.—Beaumont 1975).

In the present case, there does not appear to be any dispute as to whether an offer was made and accepted. However, the defendants are attempting to withdraw their consent to the settlement by claiming that the settlement was allegedly conditioned upon the signatures of various state officials, namely the Governor, the Comptroller, the Attorney General, the Treasurer, and representations of both the Board and the TDCJ. Nowhere in the letter extending the offer to settle is there any indication that the offer is contingent upon the signatures of anyone else. The offer was accepted according to its unconditional terms by the letter from the plaintiff's attorney dated August 12, 1991.

■ The defendants, in denying Marshall's authority to commit them to a final settlement agreement, have the burden of showing that she had no such authority. *Terrain Enterprises, Inc. v. Western Cas-*

*ualty and Surety Co.,* 774 F.2d 1320, 1322 *reh'g denied,* 778 F.2d 790 (5th Cir.1985), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1986). The defendants have offered no proof that Marshall was without the authority to settle the claim except for the cited session laws. The defendants claim that the Assistant Attorney General needs the approval of several individuals to settle a case. However, the cited law states that "[s]uch funds are to be paid out by the Comptroller on vouchers drawn by the Attorney General and approved by the Governor." General Appropriations Act, Ch. 19, at 431. The Comptroller is only to pay the funds. He is not given any approval authority. Furthermore, the cited law requires that the Governor approve the payment of funds, not that he or she approve the authority of the Assistant Attorney General to settle a case.

The General Appropriations Act, Ch. 19, Sec. 65 at 1034–1035 gives the Attorney General the authority to approve settlements and limits which funds can be expended upon settlements and judgments. An "Assistant Attorney General is authorized to carry out [the Attorney General's] legal responsibilities, and the Attorney General is responsible for the acts of his Assistant within the scope of her employment." *United States v. State of Texas,* 523 F.Supp. 703, 713, n. 2 (E.D.Tex.1981) citing *Langdeau v. Dick,* 356 S.W.2d 945, 959 (Tex.Civ.App.—Austin 1962), writ ref'd. n.r.e. Neither of the cited session laws appears to take away the substantive authority of an Assistant Attorney General to settle a case involving the state. The session laws cited by defendants are merely the procedures through which the state agencies must act to get payments made. Furthermore, those procedures cannot change the fact that a settlement is effective once there is an offer and an acceptance. The approval of the Governor and Comptroller were not a condition precedent to this settlement agreement.

CONCLUSION

■ This court finds that Assistant Attorney General Suzanne Marshall had the apparent authority to extend an uncondi-

tional offer of settlement. Once the offer was accepted, the settlement was enforceable. Like any other party, the State of Texas on behalf of the defendants herein could have extended a conditional offer of settlement contingent upon some further approval. The State, through its Assistant Attorney General, chose instead to make an unconditional offer and, once accepted by the plaintiff, was bound by that offer.

IT IS, therefore, ORDERED, that the Motion for Judgment to Enforce Settlement Agreement is GRANTED and it is further ORDERED that the Plaintiff, Nancy Petkovsek, shall have judgment over and against Defendants, Board of Pardons and Paroles of the State of Texas, Glenn T. Heckmann, William Brooks, and Wynn Dixon jointly and severally for the sum of Fifty-two thousand and five hundred and no/100 ($52,500.00) Dollars plus post-judgment interest on this amount at the current rate authorized by 28 U.S.C. § 1961 of 4.21% per annum from this date until the date of payment.